Barzalier McNeil, Respondent, *v.* The Tenth National Bank of the City of New York, impleaded with others, Appellants.

Where the owner of property confers upon another, an apparent title to, or power of disposition over it, he is estopped from asserting his title as against an innocent third party, who has dealt with the apparent owner in reference thereto, without knowledge of the claims of the true owner.

The rights of such third party, do not depend upon the actual title or authority of the one with whom he dealt, but upon the act of the owner, which precludes him from disputing the title or authority, he has apparently conferred.

Plaintiff was the owner of 134 shares of the stock of the First National Bank of St. Johnsville, the certificate of which he delivered to and left with G. B. & D., his stock brokers, to secure any balance of account. Upon the certificate was indorsed a blank assignment, and power of attorney to transfer, signed by the plaintiff, purporting on its face to have been executed "for value received." Plaintiff's indebtedness on the account was $3,000, and interest. G. B. &. D., without authority, and without plaintiff's knowledge, pledged the scrip with other securities, to secure an advance of $45,135. Defendant at the request of G. B. & D., paid the advance and received the securities. The other

securities were sold, leaving $15,219.81 of the advance unpaid.—*Held,* that defendant was entitled to hold the stock, for the full amount remaining unpaid.

(Argued April 21st, 1871 ; decided November 10th, 1871.)

APPEAL from a judgment of the General Term in the fourth district, affirming a judgment entered in Montgomery county, in favor of the plaintiff on the report of a referee.

The action was brought, to compel the surrender to the plaintiff of 134 shares of the capital stock of the First National Bank of St. Johnsville, which had been acquired by the appellant in the following manner :

In November, 1866, the plaintiff then being the owner of the shares in question, had an account with Goodyear Brothers & Durant, of the city of New York, stock brokers, relating to other stocks, which they had purchased and were carrying for him.   For the purpose of securing any balance which might become due them on that account, the plaintiff delivered to and left with them, the certificate of the 134 shares in dispute, with a blank assignment, and power of attorney to transfer indorsed thereon, signed by the plaintiff, in the following words :

For value received, the undersigned hereby assigns and transfers unto   *   *   *   *   shares of the capital stock of the First National Bank of St. Johnsville, and do hereby constitute and appoint   *   *   *   true and lawful atttorney, irrevocable for   *   *   *   and in   *   *   *   name and behalf, to make and execute all necessary acts of assignment and transfer required by the regulations and by-laws of said bank.

In witness whereof, I have hereunto set my hand and seal, this —— day of ——.

(Signed.)                B. McNEIL.

Sealed and sworn in presence of——.

On the 18th of June, 1868, at the city of New York, the appellant at the request of Goodyear Brothers & Durant, paid the sum of $45,135 to Fred. Butterfield, Jacobs & Co.,

receiving from them certain securities, including the certificate and power for the 134 shares in question, which had been previously pledged by Goodyear Brothers & Durant to Fred. Butterfield, Jacobs & Co.

Goodyear Brothers & Co. were at that time insolvent, and indebted to the appellant. In pledging the plaintiff's shares, they had acted without actual authority from him, and without his knowledge. He was indebted to them, on the account for which the shares were pledged to them, in the sum of $3,000, with interest from December 1, 1866; but the account had not been rendered, or any demand made.

The appellant, at the time of receiving the shares, had no knowledge of the plaintiff's interest therein.

The cashier of the appellant, within a few days after receiving the certificate, assignment and power, filled in the blank in the assignment and power with "I. H. Stout, cashier, Tenth National Bank, New York, one hundred and thirty-four," and dated the same the 19th day of June, 1868, and sent the scrip to the First National Bank of St. Johnsville, for the purpose of having the shares transferred on the books accordingly; but such transfer was prevented by an order of injunction in this action.

The plaintiff demanded of the appellant a surrender of the scrip, on payment of the balance due by him to Goodyear Brothers & Durant; which demand was refused.

The value of the shares was $17,420. The balance of the advance made by the appellant thereon ($45,135, less the proceeds of the other securities received therewith, $29,915.19), was $15,219.81, besides interest.

When the certificate and power came to the possession of the appellant, they bore the proper revenue stamp, duly canceled with the stamp of Goodyear Brothers & Durant, and the name of Ch. Goodyear as subscribing witness to the power. The referee found, that when the plaintiff delivered them, they were not stamped or witnessed, and that the plaintiff had never authorized those acts.

The referee found in favor of the

formity with his report, a judgment was entered, requiring a surrender of the scrip to the plaintiff, on payment by him of the $3,000 and interest due by him to Goodyear Brothers & Durant.

This judgment was affirmed at General Term, and an appeal taken to the late Court of Appeals, where, after argument, that court was divided and a re-argument ordered. The case now comes up on the re-argument.

*E. L. Fancher*, for appellant. Plaintiff constituted Goodyear Bro.'s & Durant his agents, with power to sell; and if the agents deviated from instructions, still plaintiff is bound. (Story on Agency, § 127, 131; *Com. Bank of Buffalo* v. *Kortright*, 22 Wend., 361; *Sargent* v. *Franklin Ins. Co.*, 8 Pick., 90.) Defendant as *bona fide* holder had the right to fill up the blanks, and to require a transfer of the shares on the books of the bank. (*Com. Bank of Buffalo* v. *Kortright*, 22 Wend., 348; S. C., 20 Wend., 92; *Fatman* v. *Lobach*, 1 Duer, 534; *Bank of Utica* v. *Smalley*, 2 Cow., 770; *Little* v. *Barker*, 1 Hoff. Ch. Rep., 487; *Boyson* v. *Coles*, 6 Maule & Selw., 14; *Crocker* v. *Crocker*, 31 N. Y., Rep., 507; *Bank of Buffalo* v. *Kortright*, 22 Wend., 361; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 80.)

*S. Hand*, for respondent. Defendant is not a *bona fide* holder without notice. (15 N. Y., 360; 27 How., 1; 49 Bar., 364; 20 Wend., 277.) The court will not disturb the referee's finding. (5 Duer R., 216; 3 Comstock, 168; 7 Bosworth, 394; 35 How. P. R., 286; 3 E. D. Smith's Reports, 98; 36 N. Y., 342.) The certificate is not negotiable, and a *bona fide* assignee takes subject to equities. (13 N. Y., 600; 6 Duer, 574; 28 N. Y., 604; 34 N. Y., 80; 22 N. Y., 535.) G. B and D. could not sell without first demanding payment and giving plaintiff notice of time and place of sale. (4 Denio, 227; 7 Hill, 501; 2 Comstock, 443; 25 Howard, 261; 16 N. Y., 392; 25 How., 284; 40 Barb., 648; *Markham* v. *Jaudon*, 2 Hand, 235.) The legal title remained in plaintiff

until actual transfer on the books of the bank. (13 N. Y., 625; 2 Wheaton, 393; 34 N. Y., 80.) Until then the prior equities will prevail. (3 Paige, 361; 6 Duer, 574.)

Rapallo, J. The pledge of the plaintiff's shares by his brokers, for a larger sum than the amount of their lien thereon, was a clear violation of their duty, and excess of their actual power. And if the effect of the transaction was merely to transfer to the appellant, through Fred. Butterfield, Jacobs & Co., the title or interest of Goodyear Brother and Durant in the shares, the judgment appealed from was right.

[It must be conceded, that as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism, predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance] (*Pickering* v. *Busk*, 15 East, 38; *Gregg* v. *Wells*, 10 Adol. & El., 90; *Saltus* v. *Everett*, 20 Wend., 268, 284; *Mowrey* v. *Walsh*, 8 Cow., 238; *Root* v. *French*, 13 Wend., 570.)

The true point of inquiry in this case is, [whether the plaintiff did confer upon his brokers such an apparent title to, or power of disposition over the shares in question, as will thus estop him from asserting his own title, as against parties who took *bona fide* through the brokers.]

Simply intrusting the possession of a chattel to another as

depositary, pledgee or other bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so intrusted. (*Ballard* v. *Burgett*, 40 N. Y. R., 314.) "The mere possession of chattels, by whatever means acquired, *if there be no other evidence of property or authority to sell from the true owner*, will not enable the possessor to give a good title." Per Denio, J. in *Covill* v. *Hill* (4 Den., 323).

But if the owner intrusts to another, not merely the possession of the property, but also written evidence, over his own signature, of title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents, unless it is intended that they shall be used, either at the pleasure of the depositary, or under contingencies to arise. If the conditions upon which this apparent right of control is to be exercised, are not expressed on the face of the instrument, but remain in confidence between the owner and the depositary, the case cannot be distinguished in principle, from that of an agent who receives secret instructions qualifying or restricting an apparently absolute power.

In the present case, the plaintiff delivered to and left with his brokers, the certificate of the shares, having indorsed thereon the form of an assignment, expressed to be made " for value received," and an irrevocable power to make all necessary transfers. The name of the transferee and attorney, and the date, were left blank. This document was' signed by the plaintiff, and its effect must be now considered.

It is said in some English cases, that blank assignments of shares in corporations are irregular and invalid; but that opinion is expressed in cases where the shares could only be transferred by deed under seal, duly attested, and is placed upon the ground that a deed cannot be executed in blank.

Without referring to the American doctrine on that subject, it is sufficient to say that no such formality was requisite in this case. It was only necessary to a valid transfer as

between the parties, that the assignment and power should be in writing. ( The common practice of passing the title to stock by delivery of the certificate with blank assignment and power, has been repeatedly shown and sanctioned in cases which have come before our courts. ) Such was established to be the common practice in the city of New York, in the case of *The New York and New Haven Railroad Company* v. *Schuyler* (34 N. Y., 41), and the rights of parties claiming under such instruments were fully recognized in that case. And in the case of *Kortright* v. *The Commercial Bank of Buffalo* (20 Wend., 91, and 22 Wend., 348), the same usage was established as existing in New York and other States, and it was expressly held that even in the absence of such usage, a blank transfer on the back of the certificate, to which the holder has affixed his name, is a good assignment; and that a party to whom it is delivered is authorized to fill it up, by writing a transfer and power of attorney over the signature.

It has also been settled, by repeated adjudications, that, as between the parties, the delivery of the certificate, with assignment and power indorsed, passes the entire title, legal and equitable, in the shares, notwithstanding that, by the terms of the charter or by-laws of the corporation, the stock is declared to be transferable only on its books; that such provisions are intended solely for the protection of the corporation, and can be waived or asserted at its pleasure, and that no effect is given to them except for the protection of the corporation; that they do not incapacitate the shareholder from parting with his interest, and that his assignment, not on the books, passes the entire legal title to the stock, subject only to such liens or claims as the corporation may have upon it, and excepting the right of voting at elections, etc. (Angell and Ames on Corporations, 8th ed., § 354; *Bank of Utica* v. *Smalley*, 2 Cow., 770; *Gilbert* v. *Manchester Co.*, 11 Wend., 627; *Kortright* v. *Com. Bank of Buffalo*, 22 Wend., 362· *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 80.)

In the case of *Kortright* v. *Com. Bank*, Chancellor Wal-

worth, in a dissenting opinion, strenuously maintained, in conformity with his previous decision in *Stebbins* v. *Phœnix Ins. Co.* (3 Paige, 356), that by a transfer not on the books, the transferee acquired only an equitable right to or lien on the shares; and that, having but an equitable right or lien, he took subject to all prior equities which existed in favor of any other person from whom such assignment was obtained. (22 Wend., 352, 353, 355.) But his view was overruled by the majority of the court. The action was at law in assumpsit, brought by the holder of the certificate and power, for a refusal to permit him to make a transfer on the books, and the question of his legal title was necessarily involved in the case. The judgment therein must therefore be regarded as a direct adjudication that, as between the parties, the legal title to the shares will pass by delivery of the certificate and power. (See 20 Wend., 362.)

This was reasserted in this court in the *New Haven Railroad Case* (34 N. Y., 80), notwithstanding what was said in the *Mechanics' Bank Case* (13 id., 625).

By omitting to register his transfer, the holder of the certificate and power fails to obtain the right to vote, and may lose his stock by a fraudulent transfer on the books of the company, by the registered holder, to a *bona fide* purchaser (34 N. Y., 80); but in this respect he is in a condition analogous to that of the holder of an unrecorded deed of land, and possesses a no less perfect title as against the assignor and others. And he would have an action against the corporation, for allowing such a transfer in violation of his rights. (Id.) He also takes the risk of the collection of dividends by his assignor, or of any lien the corporation may have on the shares. But in other respects his title is complete.

The holder of such a certificate and power, possesses all the external *indicia* of title to the stock, and an apparently unlimited power of disposition over it. He does not appear to have, as is said in some of the authorities cited, concerning the assignee of a chose in action, a mere equitable interest, which is said to be notice to all persons dealing with him that they

take subject to all equities, latent or otherwise, of third parties; but, apparently, the legal title, and the means of transferring such title in the most effectual manner.

Such, then, being the nature and effect of the documents with which the plaintiff intrusted his brokers, what position does he occupy toward persons who, in reliance upon those documents, have in good faith advanced money to the brokers or their assigns on a pledge of the shares? When he asserts his title, and claims, as against them, that he could not be deprived of his property without his consent, cannot he be truly answered that, by leaving the certificate in the hands of his brokers, accompanied by an instrument bearing his own signature, which purported to be executed for a consideration, and to convey the title away from him, and to empower the bearer of it irrevocably to dispose of the stock, he in fact " substituted his trust in the honesty of his brokers, for the control which the law gave him over his own property," and that the consequences of a betrayal of that trust, should fall upon him who reposed it, rather than upon innocent strangers from whom the brokers were thereby enabled to obtain their money?

These principles, in substance, were applied in the case of *Kortright* v. *The Commercial Bank*. But it is sought to distinguish that case from this; and it is argued, that there the certificate was intrusted to an agent, with authority from his principal to borrow money upon it for the benefit of his principal, and that he simply exceeded his authority by borrowing more than he was authorized to borrow, and absconding with the excess.

The facts were, that the certificate indorsed by Barker, the owner of the shares, was sent by him, together with his note for $10,000, to Bartow, the cashier of a bank in Albany, to obtain a loan of $10,000. Bartow, through an agent in New York, negotiated a loan there, upon the certificate, for $25,000, and absconded. Barker admitted having received the $10,000.

Whether the $10,000 were to be, or were, borrowed by Bartow for Barker, or advanced by Bartow or his bank, does not clearly appear; and the opinions delivered in the case

differ upon the point whether Bartow received the certificate as agent or pledgee. But, assuming that he received it as agent, the ground which lies at the foundation of the decision is, that the possession of the certificate and blank power, gave him an apparent right of control over the stock; that, if the holder of the certificate and power was exhibited to the money dealing public as having the competent right of pledge, disposal and transfer vested in him, by means of all the usual and well known evidences of such right, the private understanding of Barker and Bartow could not affect the rights of those who, if misled, were misled by Barker's own acts.

It is true that Senator Verplanck, in his prevailing opinion, cites authorities on the subject of a deviation by an agent from secret instructions, and treats the case as belonging to that class; but he also rests upon the more general principles above stated, and cites the well known case of *Pickering* v. *Busk* (15 East, 38), where the owner had allowed a broker to be invested with the *indicia* of a legal title to goods, by a transfer of them into his own name on the wharfinger's books.

The principles of agency are, however, applicable to this case. In disposing of a pledge, the pledgee acts under a power from the pledgor. The distinction between a lien and a pledge is said to be, that a mere lien cannot be enforced by sale by the act of the party, but that a pledge is a lien with a power of sale superadded. (Story on Bailments, 7th ed., § 311, note 2; *Wasson* v. *Smith,* 2 B. & Ald., 439.) The pledgee in selling, is bound to protect the interests of the pledgor, and, as to the surplus, represents the pledgor exclusively. Now, for what purpose was the apparent ownership and power of disposition of this stock vested in the brokers? Surely for the purpose of enabling them, effectually and summarily, to execute this power under certain conditions. If the power was absolute on its face, or if the whole legal title was by the instrument apparently vested in the pledgee, and the condition was secret, wherein does the case differ in principle from one of ordinary agency.

I am at a loss to conceive on what principle it can be claimed, that an apparent naked authority is more effectual to bind the party giving it, than an apparent ownership as well as authority.

In the case of *Jarvis* v. *Rogers* (13 Mass., 105), the shares were transferable by indorsement of the certificates. The shareholder indorsed his certificates and pledged them for a debt. The debtor's friend, by his authority, and with his funds, paid the debt and took up the certificates, and the debtor allowed them to remain thus indorsed, in his hands, but not for any specific purpose. This friend afterward pledged them for his own debt, to a party who advanced thereon in good faith. It was decided that the latter could hold them against the true owner.

The court, after distinguishing the case from one of mere bailment, says that after the plaintiff had put his name on the back of the certificates, and allowed them to go into the market with that transferable quality about them, it did not lie in the mouth of him who offered them to the world in that shape, to deny the effect of his own words and actions.

This decision was adhered to, and repeated in *Jarvis* v. *Rogers* (15 Mass., 389), and recognizes substantially the same doctrine as *Kortright* v. *The Com'l Bank*, omitting the element of excess by an agent, of authority actually given, which is supposed to have governed that case.

*Fatman* v. *Loback* (1 Duer, 354), is a case precisely in point, and I see no ground upon which the conclusions of the learned court in that case can be successfully assailed. The case of *McCready* v. *Rumsey* (6 Duer, 574), which is cited as overruling *Fatman* v. *Loback*, has no such effect. The question in 6 Duer was between the assignee of the shares and *the corporation*, and it was held that the lien of the corporation on the stock for unpaid subscription, was protected where the transfer was not made on the books, a position fully recognized in this opinion, and in the cases I have cited. Moreover in the case in 6 Duer, the general act under which the corporation was formed, provided that

transferees of shares should take subject to the liabilities of prior shareholders.

In the cases of *Ex parte Swan* (7 C. B. N. S., 400); *Swan* v. *The North British Australasian Co.* (7 Hurl. & Nor., 603), and *Same* v. *Same* (2 Hurl. & Coltman, 175), some of these questions received a most elaborate discussion, and there was a strong array of judicial opinions sustaining the validity of transfers of stock, unauthorized in point of fact, on the ground that by mere negligence, and unintentionally, the true owner had enabled another to deliver an apparently valid title to the stock, and thus deceive third parties.

In that case, the plaintiff had intrusted to a broker ten deeds of transfer, executed in blank, for the purpose of transferring certain shares. The broker used only eight of them for the purpose intended, and feloniously filled up and used the others as transfers of other shares, belonging to the same party, forged the name of a subscribing witness, and stole the certificates of the shares from the plaintiff's box, of which the plaintiff kept the key. He then sold the shares to *bona fide* purchasers. He was convicted of the larceny.

In a contest by the owner to get back the shares, the Common Bench was, after two arguments, equally divided upon the question, whether the owner was not estopped from reclaiming the shares, by reason of his negligence in intrusting the blank transfers to the broker, though they were intended for other shares. The case was taken to the Court of Exchequer, and that court was equally divided upon the same question. It was then taken to the Exchequer Chamber, where it was finally disposed of, principally on the ground, that to estop the owner, his negligence must be the proximate cause of the deceit. That here it was too remote, as the blank deeds of transfer were intended for other shares, and the broker had to commit forgery to make them available, and a separate felony to obtain possession of the certificates.

In the case at bar none of these difficulties exist. The assignment and power were intended for these identical

shares; they, as well as the certificate, were voluntarily intrusted by the plaintiff to the brokers, and the latter were thus invested with the apparent ownership and right of disposal, not merely by the negligence of the true owner, but by his voluntary act, and for the very purpose of attesting to the world their title and power, in case the contingency should arise in which, according to the understanding between them and the plaintiff, they would be justified in resorting to the stock for their own indemnity.

Two cases have been cited on the part of the respondent which require notice, viz.: *Covell* v. *The Tradesmen's Bank* (1 Paige, 131), and *Bush, Administrator*, v. *Lathrop* (22 N. Y., 535).

In *Covell* v. *The Tradesmen's Bank*, the complainant, being the owner of a sealed note for $2,425, payable to himself, indorsed it and pledged it to M. for a loan of $1,000. M. indorsed it and pledged it to the bank, defendant, as security for an antecedent debt of $1,000 and a fresh advance of $1,425. The complainant's debt to M. having been paid, he filed his bill against the bank and M. to obtain a surrender of the note.

The chancellor disposed of the case on the ground that the sealed note, being a mere chose in action, was not assignable in law. That the assignee of a chose in action, which must be sued in the name of the assignor, obtains only an equitable interest, the legal title remaining in the assignor; and that the interest of such assignee, being only equitable, was not protected against the prior equity and legal right of the original owner. Thus applying to the assignee of a chose in action the doctrine which he afterward, in the case of *Kortright* v. *The Commercial Bank*, unsuccessfully sought to apply to the transferree, by assignment and power, of shares of stock in a corporation.

He refers to the decision of Chancellor KENT, in *Murray* v. *Lylburn* (2 Johns. Ch., 443), to the effect that the assignee of a chose in action takes subject only to the equities of the debtor, and not subject to latent equities of a third

person against the assignor, and points out that the case of *Redfearn* v. *Ferrier* (1 Dow's Par. R., 50), cited by Chancellor Kent, was decided, not on the ground that the assignee of a chose in action was protected against a latent equity in a third person, but that a share in a joint-stock company was not a chose in action ; that the assignee had, according to the law of Scotland, the legal title to the shares, and that the equities of the parties being equal, the court would not divest him of his legal right.

In *Bush, Administrator*, v. *Lathrop* (22 N. Y., 535), the plaintiff's intestate, being the assignee of a bond and mortgage for $1,400, pledged them to Preston to secure $268.20, and delivered them to the pledgee with a note for the amount, and an assignment of the bond and mortgage, absolute on its face, but expressing a consideration of only $268.20, the mortgage being good for its full amount. Preston gave back a receipt, agreeing to redeem the bond and mortgage on payment of the note.

Preston afterward assigned the bond and mortgage to Smith & Norton, who in turn assigned to the defendant for $1,488, advanced by him in good faith. The plaintiff brought his action, to obtain a retransfer of the bond and mortgage on payment of the $268.20, with interest.

Denio, J., in delivering the opinion of the court, reviews the decision of Chancellor Kent, in *Murray* v. *Lylburn*, and other cases, on the subject of latent equities, disapproving of the doctrine of Chancellor Kent, and coming to the conclusion, that an assignment of a chose in action takes but an equitable interest, notwithstanding the provisions of the Code which authorize him to sue in his own name. That all the assignees of the bond and mortgage in question, subsequent to the original obligee, must be regarded as holding merely equitable interests, and that, as between parties so circumstanced, priority of time confers a preferable right (22 N. Y. R., 547, 548) ; following, substantially, the opinion of Chancellor Walworth, in *Covell* v. *The Tradesmen's Bank*, which he cites.

He concedes that this doctrine forms a serious impediment to his negotiation of choses in action, and alludes to the difference of opinion which may exist as to the policy of encouraging their negotiation, and to the period when it was thought so impolitic, that courts of law would not recognize the rights of assignees. But in no part of his learned and exhaustive opinion, does he seek to apply its doctrine to shares in corporations, or other personal property, the legal title to which is capable of being transferred by assignment, and the free transmission of which, from hand to hand, is essential to the prosperity of a commercial people.

The question of estoppel does not seem to have been considered in that case; and perhaps it would have been inappropriate, inasmuch as the assignment upon which the estoppel could have been predicated, if at all, expressed a consideration of only $268.20 for a good mortgage of $1,400; a circumstance calculated to excite inquiry. But it is sufficient for all present purposes to say, that the reasoning upon which the decision in that case is founded, is totally inapplicable to this.

I have reviewed the authorities at much more length than usual, by reason of the difference of opinion expressed in the late Court of Appeals in this case, and for the purpose of meeting the positions so ably maintained in the opinions, in favor of the respondent, delivered in the court below, and in the late court, on the former hearing.

My conclusion is, that the Tenth National Bank must, on the facts found, be deemed to have advanced *bona fide* on the credit of the shares, and of the assignment and power executed by the plaintiff, and is entitled to hold the stock for the full amount so advanced, and remaining unpaid after exhausting the other securities received for the same advance.

The points relative to the stamp and subscribing witness were fully answered in the opinions delivered on the first argument, and do not appear to have been the subject of dissent. I do not deem it necessary again to discuss them here.

The judgment of the General Term, and that entered on the report of the referee, should be modified, so as to allow the plaintiff to redeem, on payment of the balance due to the Tenth National Bank, on its advance of June 19th, 1868, and the costs of the action.

All concur except ALLEN and FOLGER, JJ., not voting. Judgment modified.