By the Court.—Barbour, C.J.
The only power expressly given to companies organized under the general Manufacturing Corporations Act touching the transfer of their stock, is found in the seventh and eighth sections of that act, and in the first section of title 3, chapter 18 of the Revised Statutes, which are as follows:
§ 7. The trustees of such company shall have power to make such prudential by-laws as they shall deem proper for the management and disposition of the stock .and business affairs of the company, not inconsistent with the laws of this State, etc.
§ 8. The stock of such company shall be deemed personal estate, and shall be transferred in such manner as shall be prescribed by the by-laws of the company (Laws of 1848, page 56.)
By § 1 of title 3d, every corporation, as such, is given power “To make by-laws not inconsistent with any existing law, for the management of its property, the regulation of its affairs, and for the transfer of its stock’’ ’ (subdiv. 6, 2 R. S. [5th ed., 596]).
The seventh section was designed, no doubt, to authorize each company to regulate and fix, through bylaws, the manner in which the stock that would constitute its capital when sold or subscribed and paid for, ■should be distributed and disposed of upon its organization, and also, probably, to provide by fixed rules for the manner in which stock subsequently acquired by the company as owner should be sold or held. It is quite clear that the legislature could not have intended Tby that section to empower the company to control or prohibit the sale or disposition of stock not belonging io"itself, but owned as “personal estate” bv others.
*498 The stock of a corporation, like the corporation itself, is an artificial, invisible, intangible thing, and is, therefore, incapable of actual delivery. In practice, however, certificates are issued by the company stating that certain persons are, respectively, stockholders or owners of a certain number of shares, and that the same are transferable on the books of the company by the owner in person, or by his attorney, on the surrender of the certificate, and to that is usually annexed a blank power of attorney ; and the delivery of such certificate and power, properly executed, to the purchaser upon a sale of the stock, is considered, and in law is, a good and valid symbolic delivery of the stock itself. Upon a sale of the stock and the delivery of the certificate and power, therefore, the purchaser becomes the absolute owner of the stock described in it; or rather, of all the vendor’s property and interest in such stock, wholly independent of any act of ratification or dissent on the part of the company (See McNiel v. The Tenth National Bank, 46 N. Y. 331, and cases there cited). But it seems to have been assumed by legislators from the earliest times that corporations should have the power or means of ascertaining by certain evidencé to be placed and perpetuated upon their own books what persons were in fact stockholders, and the number of' shares owned by each, so that their respective rights as voters and sharers of dividends could be determined, and the company thereby saved from vexatious litigation touching those matters ; and it was for that purpose, probably, that the provisions authorizing the company to prescribe by a by-law the manner in which stock should be transferred, was inserted in the eighth section of the Act of 1848, and in the Revised Statutes above referred to.
The defendants claim, however, that those provisions-, also empowered the company to enact the by-law which declares that11 no stock shall be allowed to be trans *499 ferred on the "books of the company if the person in whose name the stock shall stand shall "be indebted to the com]Dany, unless with the consent of. the president and treasurer, or by a vote of the board of trustees,” and that such by-law is binding upon the plaintiff. For the following brief reasons, I am satisfied that this claim of the defendants cannot properly be sustained.
First. The Act of 1848 expressly declares that the stock “ shall be deemed personal estate, and shall be transferable,” with one single exception, which is made in the act itself in these words : “ but no shares shall be transferable until all previous calls thereon shall have been fully paid in, or shall have been declared forfeited for the non-payment of calls thereon.” Upon the principle of the maxim exjpressio unius est exelusio alterius, it must be held that the legislature could not have intended to empower a company to make another and further exception by means of a by-law. The entire question as to the right of the owner to transfer his stock, together with the exceptions to that right, was before the minds of the legislators, and it must be assumed they provided for all the exceptions'they intended to make. Besides, nothing short of a direct and positive authority given by the act, in clear and explicit terms, would be sufficient to empower a company to prohibit the transfer of stock which the legislature, in the same act, had declared to be personal estate, and, with one exception, transferable. Such authority cannot be implied from the general power given to the corporation to make by-laws for the transfer of its stock, or to prescribe the manner in which it shall be transferred.
Second. It is only the manner, form, or mode in which the transfer must be made that is the subject of regulation by the company through its by-laws ; and the mode of manner of transferring thereby provided for must be a reasonable one, and not such a *500 method as will prevent an owner from transferring his stock or seriously embarrass him in so doing, nor such a one as will deprive him of any substantial right whatever. A by-law, therefore, which, at the will of all or of any of the officers or directors of the corporation, prohibits a transfer of his stock by an owner because he is in debt to such company is not only unreasonable, but wholly ultra vires and void. The law does not confer upon corporations the power of thus coercing payments under pretence of a by-law prescribing the manner in which stock shall be transferred upon its books.
Third. Sufficient evidence was presented upon the trial to show that the plaintiff purchased the stock in good faith, relying upon the certificate, which stated in effect that Bradley was the owner of the two hundred shares, and that the same were transferable upon the books of the company to the person entitled thereto upon the surrender of the certificate, and which contained no condition other than such surrender. The defendants, therefore, were estopped by their certificate from subsequently claiming that the stock was not transferable to a purchaser upon complying with the sole condition expressed therein. A contrary doctrine would open the door to the perpetration of great frauds.
The by-law relied upon by the defendants furnished no justification for their refusal to permit a transfer of the stock to be made upon the books of the corporation; and it follows that the judgment appealed from was correct, and should be affirmed, with costs.,