THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANZ KROHN, Appellant, v. WALTER T. MILLER, as Treasurer of the New York Cotton Exchange, Respondent.

Mandamus — *not allowed when the party has a remedy at law for damages — by-laws of a corporation regulating the sale of certificates of membership — right to give a lien thereon, in favor of other members.*

The relator applied for a *mandamus* to compel the treasurer of the New York Cotton Exchange to cancel a certificate of membership standing in the name of one Van Meien, and to issue a new certificate to the relator, as the assignee of Van Meien's share. At the time of the transfer of the share the relator and Van Meien each held a certificate of membership in the corporation. At the time when the certificate was offered to be surrendered to the treasurer it was worth the sum of $3,000.

*Held,* that as the relator was a member of the corporation in good standing, possessing all the immunities pertaining to that relation, and as he had nothing to gain in this proceeding beyond the ability to sell the new certificate as an article of property, his remedy was by action and not by a writ of *mandamus.*

The validity and effect of certain of the by-laws of the New York Cotton Exchange regulating the sale and transfer of their certificates by members, and the enforcement of the lien created thereon in favor of other members of the exchange considered by Daniels, J.

Appeal from a judgment entered at Special Term upon the report of a referee, denying an application for a peremptory writ of *mandamus*.

*Frank F. Van Derveer*, for the appellant.

*Francis M. Scott*, for the respondent.

Daniels, J. :

The writ of *mandamus* was applied for to require the respondent, as treasurer of the New York Cotton Exchange, to transfer a certificate of membership standing in the name of Constant Von Meien, and to issue a new certificate to the relator. The New York Cotton Exchange is a corporation formed under chapter 365 of the Laws of 1871, and its organization consists of the officers mentioned in the act, and other persons to whom certificates of membership may be issued. These certificates of membership permit the persons to whom they may be issued to transact business as members of the exchange; and, by the power given to the corporation by section 3 of its charter, to adjust controversies between its members, to establish just and equitable principles in the trade, and to maintain uniformity in its rules and regulations and usages, the corporation, through its officers, had the power to supervise and regulate the business carried on by its members. It was also empowered by the same section to make all proper and needful by-laws not contrary to the Constitution and laws of the State of New York or the United States, and by section 4 of the act to admit new members and expel any member in such manner as might be provided by its by-laws.

The relator and Von Meien each held a certificate of membership in the corporation. And the relator purchased, as he was at liberty to do under the by-laws, the certificate held by Von Meien, and took a power of attorney authorizing its formal transfer. He also executed a written transfer and assignment of the certificate to himself, which was affirmed and ratified in writing by Von Meien, and upon this instrument and the payment of a fee of twenty-five dollars ($25)

required by one of the by-laws before a transfer could be made, he applied to the treasurer to receive a surrender of the certificate he had purchased, and to issue a new certificate of membership to himself in lieu thereof. This was refused by the treasurer, and it was to enforce compliance with the request that the application was made for a writ of *mandamus*.

Upon the application, the court ordered an alternative writ to issue, to which a return was made denying the relator's right to a certificate of membership on the surrender of that purchased by him, and alleging other matters which were relied upon by way of answer to his alleged right to surrender the certificate purchased by him and to receive another in its place. The issues framed by the answer and the alternative writ were by the consent of parties referred to a referee, as that was authorized to be done by section 2083 of the Code of Civil Procedure. The order which the parties entered directed "that this proceeding be, and the same hereby is, referred to Benjamin H. Bristow, Esq., counselor-at-law of this court, as referee to hear and determine all the issues in this proceeding;" and acting under this order the referee heard and determined the entire controversy between these parties. It has been objected in support of the appeal that he was not authorized to dispose of the rights of the parties in the proceeding; but that view cannot be entertained under the very general language of the order, for the referee was empowered by it to hear and determine all the issues in the proceeding, and that included the right of the relator to a peremptory writ of *mandamus*. The trial of the issues of necessity included the determination and disposition of the rights controverted by means of them; and the referee was not deprived of that power under this order, by the provisions of the Code, directing that the writ of *mandamus* should be issued either by a Special or General Term of the Supreme Court. But if a different view of the power of the referee could be adopted it would not promote the success of the relator, for, as a matter of fact, the case was brought to a hearing upon the referee's report before the Special Term, and that court denied his application for the writ. This was a final disposition of the case by the court itself, and if the judgment entered upon the decision made by the court is correct upon the facts found by the referee then the appeal cannot be sustained.

The case contains the evidence only as to the value of the share, and the rights of the parties are accordingly to be determined upon the facts which the referee has found to have been proved upon the trial. By his report it is shown that by-laws were adopted by the corporation for the management of its affairs and the enforcement of the obligations of its members to each other arising out of the transaction of their business as members of the exchange. And by section 5 of the by-laws it was provided that a certificate of membership might be transferred to a member or a member elect, but to no other person, by a surrender thereof to the treasurer of the exchange, with a duly executed assignment and the payment of a fee of twenty-five dollars for transferring the certificate, and upon which transfer the treasurer, it was directed, should issue a new certificate of membership to the member, or member elect, mentioned in the assignment. But this was restricted by the same section which contained the declaration that no certificate of membership shall be " so transferred until a notice of the intention to make such transfer, subscribed by the member owning the certificate, shall have been posted upon the bulletin of the exchange for ten days, and until all claims against such member which may be presented within said ten days by other members of the exchange shall be settled, or while any annual dues or assessments levied on such membership shall remain unpaid." And the treasurer refused to accept the surrender and issue a new certificate, for the reason, as it was considered, that the relator had not complied with what had been required on the part of his assignor in this manner. The authority was given to the relator by his assignee to obtain a transfer of the certificate of membership on the 10th of December, 1883, and a notice in writing subscribed by Von Meien, of his intention to make a transfer of the certificate, was posted upon the bulletin of the New York Cotton Exchange at that date, and it remained posted in that manner until the month of November, 1884. But no application for the surrender of the certificate and the issuing of another to the relator was made to the treasurer of the corporation until the 19th of September, 1884. During this interval of time the assignor continued to transact business as a member of the exchange, and in that business became indebted to other members, and failed, as the by-laws require that to be done, to pay or extinguish the indebted-

ness. By one of the rules in the exchange no member was bound to accept the contract of another while a notice was posted upon the bulletin of his intention to make a transfer of his share. But the members were still at liberty to deal with him if they elected so to do, for the rule proceeded no further than to relieve them of the obligation to accept the contracts of the member proposing to sell his share. They were still at liberty, notwithstanding this rule, to accept his contracts and deal with him as long as he continued to be a member of the exchange. The members still dealt with the assignor, and in that manner this indebtedness on his part to them was created. By other sections of the by-laws, where a member in the course of his dealings became indebted to another, and the debt was not settled or liquidated at maturity, the creditor was empowered to record the fact of the failure of the debtor to meet his liabilities in a book kept by the superintendent of the exchange, entitled "Record of Failures." The by-laws then provided for further proceedings, on complying with which the share of the delinquent member might be sold and its proceeds applied so far as that should be necessary to the payment of his indebtedness to other members of the exchange.

For the satisfaction of the debts incurred by Von Meien to other members of the corporation previous to the 19th of September, 1884, the steps required by the by-laws were taken in favor of the creditor members, and a resolution was finally adopted directing the sale of this share to the highest bidder, with the object of satisfying these demands out of its proceeds. The right of the corporation to proceed in this manner was denied on behalf of the relator, for the reason that a notice of the intention to transfer this share had been posted upon the bulletin of the exchange for more than ten days prior to the contraction of either of these debts. But a doubt arises as to the sufficiency of the notice itself to produce this effect, for the by-law has in effect directed that the notice to be posted shall be of the intention to make a transfer of the certificate by the action and under the authority of the treasurer of the exchange, while it does not appear, as the fact has been found in the case, that such a notice was posted upon the bulletin. What the referee has found as to this fact is that Von Meien on the 10th of December, 1883, caused to be posted upon the bulletin " a notice

in writing, subscribed by himself, of his intention to make a transfer of said certificate," which fell short of the statement to be made in the notice prescribed by the by-law, for that was required to express the intention to make the transfer by a surrender of the certificate held at the time to the treasurer, and to receive a new certificate of membership in its place from him. The notice which was posted, as the referee has described it, would be entirely satisfied with a transfer made from Von Meien to the relator, which would be insufficient to produce a termination of the membership of his assignor. Then the by-law provided that the notice should be one of ten days, and the notice it designated was that the surrender and transfer of the certificate permitted by the preceding portion of the section should be made by the action of the treasurer of the exchange. While the by-law has not in language so expressed, it is not an unreasonable inference from it that the notice was intended to indicate when the surrender would be made and the new certificate applied for. It did not, certainly, by its language authorize an indefinite notice to be given that might extend through a period of years as well as months. But the notice was restricted to the period of ten days, and if at its expiration no surrender of the certificate should be offered, and no application for a new certificate made, it would not be an unreasonable construction of the by-law to hold that the proceeding had been for the time abandoned. To allow the notice to remain indefinitely effectual, would operate unjustly upon the other members of the exchange. For while it would permit the person named in the certificate proposed to be sold to continue to act as a member, and to induce other members to accept his contracts, it would empower him to defeat the remedy provided for by the by-laws for the collection and payment of their obligations.

The other sections of the by-laws contained in the report of the referee are not consistent with this freedom from liability asserted on behalf of the certificate in controversy. For they have provided generally for the enforcement of the payment of the indebtedness of one member to another out of the proceeds resulting from the sale of the delinquent member's certificate. And until the certificate itself may be surrendered, and a new certificate cf membership issued upon its surrender, both the corporation and its

members would seem to have the right to regard the person pro-
posing to sell or transfer his certificate, as still a member, until the
transfer should be made complete by the issuing of a new certificate.
As between the parties themselves to the transfer the title to the
certificate would pass without complying with the by-law providing
for its surrender and the issuing of another certificate in its place.
But as to the corporation and the other members of the exchange
the rule should be different, as it clearly is so far as by-laws apply
to shares of stock owned in a private corporation.   There a transfer
between the parties themselves will convey the title, but where no
notice of it may be given to the corporation and no transfer of
the shares shall be made upon its books, it can only consider as the
owner the person appearing to be such upon its own records.
(*McNeil* v. *Tenth Nat. Bank*, 46 N. Y., 325, 332; *Cushman* v.
*Thayer, etc , Co.*, 76 id., 365; *Brisbane* v. *Delaware, etc., Co.*,
94 id., 205.)   And that rule, from the reason upon which it is
founded, seems to be equally as applicable to this case.   It might
very well be assumed, even if the notice which was posted com-
plied in its form with the by-laws, that the intention to transfer the
certificate was abandoned if that was not done at the expiration of
the ten days mentioned in the notice, and upon that presumption
the person giving the notice would still be entitled to conduct him-
self in his dealings as a member of the exchange.   If it had not
been the purpose that the transfer should follow the expiration of
the ten days, then no object existed for prescribing that period of
time at all.   If an indefinite notice, not less than ten days, was what
was intended to be permitted, it is only reasonable to presume that
the by law would have so declared.   And that it did not do so, but
provided for the posting of a notice for ten days and no more and
no less than that, it may be inferred that it was intended that a
definite notice as to the time  should be given by the person
proposing to transfer the certificate.   The propriety of this
construction is disclosed by the careful provisions contained in
the succeeding by-law, providing for the enforcement between
themselves of the obligations of the members of the exchange.
And as to the corporation these persons continued to be members
who appeared by its certificates to be such, and that was the relation
which Von Meien maintained to the exchange until the application

for the surrender of the certificate was first made on the 19th of September, 1884.

It has been urged that the power did not exist to enforce the payment of debts against this certificate created after the expiration of ten days from the time when the notice was posted. The by-law does designate preceding debts as the only claims which the member must pay before he can be permitted to transfer his certificate. But this objection also fails entirely of its effect if the notice itself is to be held to expire with the ten days; and if it does not, then a member of the exchange not indebted could post his notice upon the bulletin of his intention to transfer his certificate, and omit to do it at the expiration of the ten days, and then continue to act upon it for years afterwards and deprive the other members of the exchange, having demands against him arising out of their dealings, from all right of satisfaction by the appropriation and sale of his certificate. That could not have been the intention of the by-law, and it is not necessary so to construe it. It should not be applied in such a manner as to permit this misconduct as well as injustice, if that can be, as it may under the by-laws be, avoided.

But without disposing of the case upon these considerations a further legal difficulty stands in the way of the success of the proceeding. The relator has, at all times referred to in this controversy, been the owner in his own right of another certificate of membership in the exchange. Under that all the rights and privileges pertaining to membership are possessed and enjoyed by him. An additional certificate would not increase these privileges, beyond the unimportant circumstances that he might post a notice of his intention to transfer the one he now has, and still insist upon the obligation of the members of the exchange to accept his contracts. But as no intention has been asserted in his behalf at any time to transfer the certificate he now has, a mere possibility, or contingency of this description, can legally have no direct influence in the disposition of this controversy. As the case upon the facts has been presented he is a member in good standing, possessing all the immunities pertaining to that relation, with the other members as well as the corporation itself. What he has to gain in this proceeding, and all that he has is another certificate, in no manner increasing his rights beyond the ability to sell it as an article of property. And

even though he may be unlawfully deprived of that right, his remedy for its correction is not by way of the writ of *mandamus*. Upon this subject it has been stated as the law that "the existence of another adequate remedy by an ordinary action at law is a sufficient bar to the exercise of the jurisdiction by *mandamus* over corporate associations or organized bodies as well as in all other cases, it being a fundamental principle lying at the very foundation of the law of *mandamus* that the writ is never granted where the law supplies another adequate and specific remedy." (High on Extraordinary Remedies, etc., § 283.) And the same legal principle has been stated in nearly the same language in section 710 of Angell & Ames on Corporations.

It was also considered and so defined in *Matter of Shipley* (10 Johns., 484). The certificate according to the evidence was of the value of three thousand ($3,000) dollars at the time when it was offered to be surrendered to the treasurer and he was requested to issue another in its place. A recovery of that amount would fully indemnify the relator for whatever loss he may have sustained, if he was entitled to the new certificate. And that value could legally be recovered by him if he is right in the position that the certificate which he applied for should have been issued to him. (*Sargent v. Franklin Ins. Co.*, 8 Pick., 90; *Gray v. Portland Bank*, 3 Mass., 364; *Bond v. Mt. Hope Iron Co.*, 99 id., 505; *Murray v. Stevens* 110 id., 95; *German Union Building, etc., Association v. Sendmeyer*, 50 Penn., 67; *Bank v. Lanier*, 11 Wall., 369; *Bank of Attica v. Manufacturers, etc., Bank*, 20 N. Y., 501; *Commercial Bank v. Kortright*, 22 Wend., 348.)

In cases against public officers and in certain cases against corporations, the writ of *mandamus* has not been refused where an action for damages might also be maintained. (*McCullough v. Mayor, etc.*, 23 Wend., 458; *Buck v. City of Lockport*, 6 Lans., 251.) But no such departure from the general rule has been made or sanctioned, where the writ of *mandamus* has been applied for to obtain a mere article of property of a fixed and definite value, the recovery of which would afford full justice to the applicant. That is this case, and both the referee and the Special Term adopted that view of it in the decision and judgment which have been made and rendered. On this ground, therefore, even if that previously considered should

not be held to be controlling, the relator was not entitled to this writ and the judgment should be affirmed, with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.