Daniels, J.
At the close of the evidence a verdict , was directed in the plaintiffs’ favor for 6,000 shares of the capital stock of the Little Pittsburgh Consolidated Mining Company. Four thousand of these shares were delivered by Fielding L. Wilhams to the defendants on the 9th of January, 1882, and the additional 2,000 on the 2d of February, 1882. A receipt was taken for the 4,000, stating no more than the fact that these shares had been received from Wilhams. The receipt for the 2,000 did express the additional 'fact that the shares were received for safe keeping. While they were held by the. defendants they had blank powers of sale endorsed upon them either by Wilhams himself or the persons in whose names the shares stood upon the books of the corporation under his authority. And if, in reliance upon his apparent ownership, the defendants had made advances upon the shares without notice that the plaintiffs were interested in them, they could have been held as security for such advances. McNeil v. Tenth National Bank, 46 N. Y., 325; Merchants Bank v. Livingston, 74 id., 223, 226.
But while it appeared that Wilhams was indebted to the defendants after these shares were received by them, it was not proven as a fact that they had been hypothecated for the indebtedness, or that any advances had been made upon them. The defendants, Joseph Walker and his son, Joseph Walker, Junior, were examined as witnesses upon the trial, and while their evidence proved their dealings with Williams it failed to establish the fact that any agreement or understanding had ever been entered into that advances made by them, or indebtedness arising out of their transactions, should be charged upon these shares as security. The defendant Joseph Walker did testify that they asked Wilhams for security when he gave them this stock, but he failed to prove that it was agreed or understood that these shares should be held as such security. On the contrary his statement is that what was said at the time he deposited the shares was that he wanted me to take care of this stock for him. Nothing was said about its being margin upon his account by him, or by -me, at that time. Nothing was said to the effect that he did so as margin, but at that time he had a credit balance in his favor of nearly $12,000. And this was "sustained also by the evidence of his son. The defendants accordingly were not in a position to withhold the shares from the plaintiffs if they were in fact the owners of them.
And that they were such owners was positively stated by Williams in his evidence. According to that evidence, he acted for the plaintiffs who were his sisters, and deposited the shares with the defendants only for safe keeping, *62 until orders might be given for their sale. These shares, he testified, were delivered to his sisters as security for a noté of thirty-two thousand dollars, and they held them for some time in their box. How the title was changed and vested absolutely in the sisters was not made to appear upon the trial, but it was stated as a fact that they were the owners of the stock. And as no explanation was asked as to the manner in which they became the owners from being mere pledgees, it is to be assumed that it was legally done through their dealings with their Brother. This evidence of their title was in no manner contradicted upon the trial, neither was the statement of the fact that the shares were delivered to the defendants for safe keeping, but that is distinctly stated to have been the fact in the last receipt. And it may be inferred to have been so from the first, in as much as it expressed no different intent or design.
There was no controversy in the case concerning.the demand and refusal to deliver the shares ; neither as there as to the value of the shares themselves, and when the evidence was closed the defendants moved to dismiss the complaint, because they were bona fide holders of the stock without notice of the plaintiffs’ interest. That was denied and their counsel excepted to the denial. The plaintiffs thereupon requested the court to direct a verdict in their favor for the return of the stock, which the court accord - ingly did, and to that the defendants likewise excepted. Both parties in this manner presented the case to the court as wholly dependent upon legal propositions which it was asked to decide for its disposition, and the court so considered it. But when it was decided to direct a verdict for the plaintiffs, then the defendants counsel asked to go to the jury on the facts in the case, which was refused, and to that refusal they excepted. And in support of that exception it is now insisted that the credibility of the witness Williams should have been submitted to the jury, under the rule stated in Koehler v. Adler (78 N. Y., 287.)
But if that had been desired, after both parties had concurred in requesting the court to dispose of the case upon what they deemed to be their legal rights, it should have been specially requested. There was nothing whatever in the request which was made, intimating to the court that there was the least desire to submit this point to the jury.
If that had been applied for, probably such a direction would have been given, but it would not be fair either to the court or the plaintiffs, to direct a new trial, after the practical concurrence of both parties, that the case depended solely upon the application of the law, when no request was afterwards made to submit this particular point to the consideration of the jury. The case was disposed of at the cir *63 cuit in conformity to the evidence, and the motion for a new trial should "be denied, and the plaintiffs have judgment upon the verdict.
Van Brunt, Oh. J., and Brady, J., concur.