# PATAPSCO NATIONAL BANK OF ELLICOTT CITY, MARYLAND,

*vs.*

## JOSEPH K. T. MEADS ET AL.

*Stocks and certificates of deposit: endorsed in blank, with blank power of attorney; delivery; right of innocent holder who accepts as collateral—without notice.*

Where the owner of a certificate of deposit for certain bonds, by a blank endorsement for value received, sold, assigned and transferred to * * * all right, title and interest in and to the certificate and property therein described, etc., with blank power of attorney to transfer the same on the books of the depository, with the power of substitution, and delivered or left the same with another; and the latter borrowed money from a bank (which had no knowledge that the borrower was not the transferee or owner of the certificate) with the said certificate as collateral, *it was held* that the true owner of the certificate as against the bank was not entitled to it until he paid to the bank the value of the loan that had been secured upon the collateral.

p. 581

*Decided December 13th, 1917.*

Appeal from the Circuit Court for Howard County. In Equity. (BRASHEARS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*F. Neal Parke* and *Daniel M. Murray,* for the appellant.

*Reuben D. Rogers* (with whom was *Irving H. Mezger* on the brief), for the appellees.

Boyd, C. J., delivered the opinion of the Court.

The important facts in this case may be thus stated : Charles W. Jordan was for some years in the employ of the firm of Mackubin, Goodrich Company, stock brokers in Baltimore City, as manager of its bond department.    Mr. Goodrich testified that Jordan's duties were "selling securities, buying securities with the consent of the firm, or they were purchased individually by the firm, and soliciting general business for the firm."    In the latter part of 1915 that connection with the firm ceased and he engaged in the work of tax expert or specialist, but he was continued on a salary to solicit business for the firm in connection with his own business.    The appellee, Joseph K. T. Meads, had dealings with the firm through Jordan.    Mr. Goodrich said that, "Mr. Jordan did everything in the name of Mr. Meads.    There was an understanding between Mr. Meads, Mr. Jordan and my firm that all he did on account of Mr. Meads was satisfactory."    An account was carried by the firm with Mr. Meads, which on June 11, 1915, he ordered the firm to close.    In accordance with the order the firm gave Mr. Jordan for Mr. Meads $106.02 balance as cash due, and a certificate of deposit with the Union Trust Company of Pittsburg, Depository, by Mackubin, Goodrich Company, of two bonds of the par value of $1,000 each of the Merchants' Coal Company of Pennsylvania.    That was "endorsed" in blank by the firm, as the witness spoke of it and we understand him to refer to an assignment which will be referred to later.    The bonds of the coal company were secured by a deed of trust, and, receivers having been appointed for that company, the bonds were deposited with the Trust Company under an agreement between certain depositing bond holders and a committee—certificates being issued for them by the Trust Company.    On June 11, 1915, Jordan

wrote to Meads that he had received from the firm a check for the $106.02, which he enclosed, and certain securities, including the certificate of deposit for the Coal Company bonds, "all of which I hold for safe keeping in an envelope marked 'Property of J. K. T. Meads and Sarah M. Meads, either or the survivor.' For the present, these are held in the vault in my office until such time when I shall place them in a safe deposit box." The bonds were purchased by Meads from the firm, through Jordan.

Jordan died in the early part of 1916. In September, 1915, he borrowed from the appellant bank $500, on a note secured by the certificate of deposit spoken of, and later the bank made him another loan, on which there is a balance due of $175, with some interest, for which the bank claims the certificate is also collateral. Meads knew nothing about the hypothecation of the certificate until he went to the office of the attorney for the administrator of Jordan, in response to a letter dated April 25th, 1916, and never saw the bonds. He said that Jordan never told him about a certificate being issued, although he did tell him about the coal company being in trouble, and he never saw the certificate until he saw it at the bank, after he heard it had been hypothecated by Jordan.

Meads had known Jordan for fifteen or sixteen years, and Mr. Hardinge, the president of the bank, who had the transactions with him, had known him for a number of years. When Jordan borrowed the $500 he stated to Mr. Hardinge that he needed the money in connection with his new business. He informed Mr. Hardinge that the collateral was worth from $1,200 to $1,600. The bank had purchased for clients some of the same bonds.

A bill in equity was filed by Meads to enjoin the bank from selling or disposing of the certificate, and to require it to deliver up the certificate. The administrator of John and Mrs. Meads were made parties at the instance of the bank, but Mrs. Meads testified that she had no interest in the certificate, and the evidence shows that Mr. Meads owns it, sub-

ject to such rights as the bank has in it.    The appeal was taken by the bank from a decree making an injunction previously issued perpetual, and requiring the bank to deliver to the plaintiff or his solicitor of record the certificate, together with all dividends and interest, if any, received by it since obtaining possession of the certificate, free, clear and discharged from all claim or demands which the bank claims to have.

The question then is whether under the law Meads or the bank is entitled to the certificate.    The Court below was of the opinion that the cases of *Taliaferro* v. *Bank,* 71 Md. 204; *German Savings Bank* v. *Renshaw,* 78 Md. 475; *Merchants Bank* v. *Williams,* 110 Md. 334, and *Bartlett* v. *Calvert Bank,* 123 Md. 628, were conclusive of the question in this State, and the solicitors for Mr. Meads also rely on them. The bank contends that Meads was negligent in entrusting to Jordan the *indicia* of ownership and that as his negligent course made it possible for Jordan to commit the wrongful conversion of the certificate to his own use redress will be denied him; and that the certificate purporting to be negotiable Meads is estopped to deny its negotiability and is not entitled to relief.

In *Taliaferro* v. *Bank, supra,* an attorney had been entrusted with some registered Virginia coupon consols, to be sold when a specified price was reached.    The attorney procured printed forms of transfers and powers of attorney and caused the owners to sign them in blank.    He pledged the consols to a bank as collateral for his own debt, and the bank sold them.    The owner brought an action of trover for their value against the bank.    It was held that the blank assignment, with the power of attorney to sell and transfer the securities, did not operate as an endorsement to the attorney, and upon its face not being an authority to pledge, the bank took no better title than the attorney had, and that the instruments and power of attorney gave notice to the bank that there was reason to question whether the attorney was authorized to deal with them as he did.    Some other questions, such

as ratification, etc., arose in that case which are not in this. In *Bank* v. *Renshaw, supra,* Renshaw had delivered to Nicholson & Son, brokers, certificates of stock, upon the back of which were blank forms of assignment and powers of attorney, signed by Renshaw, as collateral security for stocks purchased, or to be purchased by Nicholson & Son on margins, with authority to them to sell them, if necessary to meet any indebtedness by him to them. Nicholson & Sons failed in business, and before their failure had hypothecated the stock to the bank, as security for a loan made to themselves. At the time of the failure the balance of accounts was in Renshaw's favor. In an action of trover against the bank it was held that having received the stocks under those assignments, executed in blank and conferring only a power to sell, the bank was put upon its inquiry as to the right of Nicholson & Son to pledge the stock for their own debt. The assignments in that case were similar to those in *Taliaferro case.*

In *Merchants Bank* v. *Williams,* 110 Md. 334, JUDGE BURKE, in speaking for the Court, reviewed those and other cases, and held that the plaintiff was entitled to recover in an action of trover, under the circumstances of that case. The plaintiff purchased 100 shares of stock of the Wabash Railroad Company through brokers in New York. The stock certificate was issued to Sternberger, Sines & Co. Mrs. Williams, the plaintiff, owed the New York brokers a balance of $216.45 on account of the stock. Her husband, who was a customer of Wilson, Colston & Co., bankers and brokers of Baltimore, arranged with them to overdraw his account to the amount necessary to pay for the stock, and agreed that the securities they held in his name and that certificate of stock could be held against his debit account. When the certificate of stock was received from the New York brokers, he sent to Wilson, Colston & Co. to be held by them with the other securities, in pursuance of the arrangement. A few months afterwards Wilson, Colston & Co. borrowed for their own use and benefit a sum of money from a Fredericksburg, Va., bank, which acted through the Merchants National Bank of Balti-

more, as its agent, and pledged, among other collateral to secure the loan, the Wabash stock which belonged to Mrs. Williams. Afterwards Wilson, Colston & Co. failed and the Wabash stock was sold, the proceeds being applied to the loan. Neither the Fredericksburg Bank nor the Merchants Bank at the time of the pledge had any *actual* knowledge of any right, interest or claim of either Mr. or Mrs. Williams in or to the Wabash stock. JUDGE BURKE spoke of the fact that the assignment and power of attorney in the *Renshaw case* were identical in form with those in that case, and as we have said, those in the *Taliaferro case* and the *Renshaw case* are similar.

The form of the assignments and powers of attorney in those three cases differ materially from the assignment in this case, as will be seen by referring to those decisions. In this case the assignment and power are as follows: "For value received * * * hereby sell, assign and transfer to * * * all right, title and interest in and to the within certificate, and the property therein described, subject to all the terms and conditions of said certificate and of the agreement referred to therein, and hereby irrevocably constitute and appoint * * * attorney to transfer said certificate on the books of The Union Trust Company of Pittsburg, Depository, with all the powers of substitution. (Signed) Mackubin, Goodrich Company. Witness: H. E. Demuth."

It was held in the *Williams case,* following the others mentioned and *First Nat. Bank* v. *Taliaferro,* 72 Md. 169 (being the second appeal); that the assignments and powers of attorney in those cases did not "clothe the broker with whom the stock has been pledged with the *indicia* of absolute ownership, and further that such endorsements give no right to the broker to pledge the security for his own debt," etc. In each of those cases the power of attorney expressly authorized the attorney "to sell, transfer, assign and set over," etc., and it was said that it was notice to the pledgee that the power was to sell, and not to hypothecate. In this case by the assignment the holders "hereby sell, assign, and transfer to * * * all right,

title and interest in and to the within certificate, and the property therein described," and the power of attorney simply appointed * * * attorney to transfer the certificate on the books of The Union Trust Company—not *"to sell"* the certificate. *"All right, title and interest"* in and to the certificate and to the property therein described—that is to say, the bonds represented by the certificate—were sold by the first part of the assignment, and all that was necessary for an attorney to do was to transfer the certificate, as provided for in it.

It seems to us therefore that this case materially differs from those mentioned, and it is difficult to understand how owners of such certificates could use stronger language to show that they intended to vest in the assignee their absolute and entire interest in the certificate and property mentioned. Mackubin, Goodrich Company did own absolutely the certificate and *did intend* to part with all of their interest in it, as they actually did. Unfortunately for Mr. Meads his confidence in Jordan was such that he did not require him to deliver the certificate to him or to have his own name inserted as the purchaser. Mr. Meads testified that he did not know that there was such a certificate, but if he did not, it was owing to his negligence and carelessness. The letter of Mr. Jordan to him, dated June 11, 1915, when the account with Mackubin, Goodrich Co. was finally settled, said he had received, amongst other things, "$2,000 Certificate of Deposit for Merchants Coal Company of Pennsylvania Bonds," and that he held in the vault in his office that and the other securities "until such time when I shall place them in a safe deposit box." Although Mr. Jordan did not die until nine or ten months thereafter Mr. Meads never even took the trouble to ask to see the certificate or apparently even inquire whether it and the other securities had been placed in a safe deposit box. There is certainly nothing unusual in leaving the name blank in such a certificate. If bank officers can not loan money to a holder of such a certificate as this and under the circumstances of this case, and take it as collateral, without the risk of some one as guilty of negligence as Mr. Meads was

stepping in after the death of the borrower and saying that the security was his and not his agent's, and the bank must surrender it to him, then indeed are banks in an unfortunate position and the real owners of such securities will be put to great inconvenience. An owner of such a security, desiring to borrow money on it, but not to sell it, does not care to fill up the blanks every time he secures a loan and then go through the form of transferring it to the lender, and when he pays the debt have him re-transfer it.

But the *Williams case,* in our opinion, determines the question in favor of the appellant. JUDGE BURKE said that "the cases relied on by the Merchants Bank in support of the doctrine of equitable estoppel, among which are the cases of *McNeil* v. *The Tenth National Bank,* 46 N. Y. 325, and *Shattuck* v. *The American Cement Company,* 205 Pa. St. 197, are quite distinguishable in their facts from the case in hand." Then, after stating the principle upon which they rest and citing several Maryland cases, said: "In the *McNeil* and *Shattuck cases, supra, the blank assignments and powers of attorney were absolute and unrestricted,* and the principle of equitable estoppel, upon the facts of those cases, might have been well applied."

An examination of the assignment and power of attorney in the *Shattuck case* will show it is substantially the same as the one in this case—the only material difference we note is that in this case the certificate of the Trust Company has at its top the words "Negotiable Certificate," and it is a certificate of the holding of coupon bonds. The form of the bonds is not in the record, but from the description of them in the certificate, they are apparently negotiable. The certificate as shown on its face was intended by the parties to be negotiable, and there was all the more reason for the president of the bank believing that Mr. Jordan was the absolute and unquestioned owner of the certificate. The *Williams case* is therefore an authority in favor of the appellant. There is nothing in the case of *Bartlett* v. *Calvert Bank,* 123 Md. 628, in conflict with what we have said—on the contrary it shows that the assignment and power of attorney may be in such

form as to make the *Taliaferro, Renshaw* and *Williams cases*
inapplicable. In *Bartlett's case* the attorney was authorized
to "sell, hypothecate or dispose of," etc., and of course there
could be no doubt about the right to hypothecate. The con-
test was as to the amount the holders could hypothecate the
stock for under the facts of the case.

Other authorities which might be cited are 2 *Corpus Juris.*
882 (sec. 568); 31 *Cyc.* 843, 1607; 2 *Mechem on Agency*
(2nd Ed.), sec. 2115; *Cook on Cor.* (7th Ed.), sec. 473.
There are also a number of the Maryland cases in reference
to the dealings with an agent, but as in this case it was not
known by the bank that Jordan was agent we do not deem it
necessary to discuss such as *Lister* v. *Allen,* 31 Md. 543, and
others following it.

Nor do we deem it necessary to discuss at length the second
ground taken by the appellant—that the bank is protected be-
cause the certificate is negotiable. It seems to be the rule
that parties can make themselves liable as for negotiable in-
struments by the use of suitable language on the instrument.
See 1 *Daniel on Neg. In.* (6th Ed.), sec. 106. *Pollock on
Contracts* (3rd Ed.), 294. But we will place our conclusions
on the ground that, under the facts and circumstances of the
case, the form of the assignment, power of attorney, etc.,·
there was no reason for the president of the bank to inquire
further as to the ownership of the certificate, or to suppose
that Jordan did not own it, and as Mr. Meads' negligence
enabled Jordan to impose on an innocent party, acting in good
faith and with due care, he is estopped from asserting his
claim against the bank, and he and not the bank must suffer
the consequences.

It is clear that the bank is entitled to be paid the note for
$500 but the record is not clear enough for us to determine
whether it is entitled to the $175.00 note. That can be deter-
mined by the lower Court. Neither note is in the record
and whether the hypothecation of the certificate included the
last note is not satisfactorily shown.

*Decree reversed and cause remanded—Joseph
K. T. Meads to pay the costs.*