S. N. CASTLE, J. B. ATHERTON and G. P. CASTLE, constituting the Firm of CASTLE & COOKE *vs.* W. O. SMITH, Assignee in Bankruptcy of A. F. COOKE.

APPEAL FROM DECISION OF JUDD, C.J.

JANUARY TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, and BICKERTON JJ. DOLE, J., being interested, not sitting.

Certificates of stock having been deposited without endorsement but with a memorandum, viz: "The within certificates of stock belonging to A. F. C., passed over to C. & C., for security for $12,000 of P. N. Co's. four notes of $3,000 each:"

Held, against the contention that only the dividends were thereby pledged, that the transaction was, in equity, a mortgage.

The pledgee having become bankrupt while the stock was so in pledge, the debt being unpaid:

Held, that against the equities of the plaintiffs, the general creditors had no claim.

Decreed, that the pledgee do endorse the certificates which may be sold under the mortgage, the plaintiffs having leave to prove claim against the bankrupt's estate for any unsatisfied balance.

Decree affirmed.

OPINION OF THE COURT, BY McCULLY, J.

The case is fully stated in the following opinion of the Chief Justice, from whose decree in favor of the plaintiffs the appeal is taken to this Court.

OPINION OF CHANCELLOR JUDD.

The essential facts of this case are as follows: A. F. Cooke, (defendant's bankrupt) on the 1st October, 1885, being a large stockholder in and President of the Pacific Navigation Co., a corporation, delivered to plaintiffs as further security for promissory notes of the corporation for $12,000, certificates num-

bered 436 to 445, for ten shares in the Haiku Sugar Co., the par value of which was $500 each.   The certificate of stock was not endorsed by Mr. Cooke, nor was any transfer made on the books of the Haiku Sugar Co.   The understanding between Mr. Cooke and Mr. Atherton was that the dividends accruing on the stock were to be collected by Castle &. Cooke, and applied on the notes.   This has been done ever since, but the dividends have not kept the interest paid.

Mr. W. O. Smith duly qualified as assignee in bankruptcy of A. F. Cooke, on the 16th of December, 1887.

In an action of replevin by Mr. Smith, as assignee of A. F. Cooke, against Castle & Cooke (6 Hawn., 697), I held that the legal title to this stock was in the assignee, and ordered judgment for their possession in his favor.   The main object of the present bill is to compel a specific performance of the agreement for security by the assignee, by his being ordered to execute and deliver to the plaintiffs a proper assignment of the stock together with a notice or direction to the Haiku Sugar Co. to note the transfer on the books of the Company.

It is claimed that the writing made by Mr. Cooke on the envelope containing the stock, which after describing it, says: " The above certificates of stock belonging to A. F. Cooke passed over to Castle & Cooke for security of $12,000 of Pacific Navigation Co. four notes $3000 each, October 1, 1885, 6, 12, 18 and 24," constitutes an executory agreement for the transfer of the stock as collateral security.   The defendant contends that the real agreement was for a special pledge of the dividends only and that, in any event, it cannot be enforced against the assignee.

I think the writing made by Mr. Cooke on the envelope containing the stock is sufficient to show an intention to pledge the stock itself.   It may be, as he says, that he intended to pledge only the accruing dividends and for that reason did not endorse the stock, but the writing he made does not limit the pledge to the dividends.   Moreover, a pledge of dividends gives a lien on that from which they grow, the stock itself.

In *Exparte Wills*, 1 Ves., 162, Lord Thurlow says, speaking of assignments of rents and profits as a security: "It is an odd way of conveyancing, but it amounts to an equitable lien."

In 3 Pomeroy Eq., Section 1237, the cases are gathered establishing the principle that a lien arises from executory agreements which do not convey or transfer any legal estate in the property, but which stipulate that the property shall be security, or which pledge it for the performance of an obligation.

"The intent to give a security being clear, equity will treat the instrument as an executory agreement for such security." *Id.*

Colebrooke on Collateral Security, Section 276, says: "The use of certificates of stock as collateral security, when made by mere delivery of the certificates without any power of transfer properly signed, vests in the pledgee an equitable title only. The pledgee is unable to enforce his security upon default, by the ordinary processes of sale; but he may obtain relief in equity, when the performance of the necessary acts to render the security available may be decreed." *Nesbit vs. Macon Bank*, 12 Fed. Rep., 686; *Allen vs. Dykers*, 3 Hill, 593; *Newton vs. Fay*, 10 Allen, 505.

Can the assignee in bankruptcy be compelled to transfer the stock in pursuance of the executory agreement made by the bankrupt?

In *Cook vs. Tullis*, 18 Wall., 332, the Supreme Court of the United States, per Field J., say: "Assignees in bankruptcy take the property of the bankrupt subject to all legal and equitable claims of others. They are affected by all the equities which could be urged against him." See also *Clark vs. Flint*, 22 Pick., 231; *Railway Company vs. Burnside*, 5 Exchequer, 129.

Against this view, I am referred to *State Fire Ins. Co. vs. Olmstead*, 33 Conn., 480, where the Court declined to enforce an executory agreement for the transfer of stock as collateral security for a debt, where the debtor has died insolvent. The ground for refusing the relief seems to be that had the stock been attached by any creditor in the lifetime of Olmstead, the

lien would have been dissolved for the benefit of all his creditors. The Court say : " On his death all his creditors stand upon the same footing and equality in equity."

But I cannot see why the attachment of the stock before the death of Olmstead, or before his bankruptcy, would have dissolved the lien, unless the agreement to pledge had been made when Olmstead was insolvent, in which case the lien would be dissolved on proof that the pledgee had reasonable cause to believe the pledgor to be insolvent.

In *Nesbit vs. Macon Rank*, 12 Fed. Rep., above cited, the pledge made by the bankrupts was held to be void under the statute as having been made by an insolvent with a view of giving a preference, and the person receiving it had reasonable cause to believe the pledgor was insolvent.  But the agreement in this case before me is not attacked on the ground that Cooke was insolvent when he delivered the stock to Castle & Cooke. I think the lien on the stock would not be good as against creditors who trusted Cooke on the fact that the legal title of the stock was still in him.  But no allegation of this kind is made in the answer.

The Connecticut case admits that " there is no doubt of the general equity of the petitioners (pledgees) as against Olmstead, if he was still living, or against his heirs now that he is dead." I cannot see that the fact that Olmstead died insolvent would prevent equity from decreeing the specific performance of the executory agreement for the transfer of the stock, unless the agreement itself was in fraud of creditors.

Having found in the case before me that no rights of third parties would be prejudiced by the specific performance of the agreement made between Cooke and Castle & Cooke, I think the prayer of the bill should be granted.

Decree accordingly.

BY THE COURT.

Two questions are involved in the controversy : What were the rights of the parties in or to the ten shares of Haiku stock, before the date of the bankruptcy of A. F. Cooke:  What effect, if any, has the bankruptcy on those rights ?

The written memorandum of A. F. Cooke, accompanying the deposit: "The above certificates of stock belonging to A. F. Cooke passed over to Castle & Cooke for security of (for) $12,000, of Pacific Navigation Co. four notes of $3000 each," cannot be construed in itself to mean anything else than a pledge of the stock. The proof, aside from this, that the parties intended that only the dividends should be drawn and retained, is consistent with the transaction of depositing a security with the intention and hope of redeeming it. But if this fail, what security has been obtained if the property pledged is to be given up? If only the dividends are to be appropriated, why should the stock be surrendered until the debt has been paid?

" If a transaction resolve itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is in equity a mortgage ; " *Flagg vs. Mann*, 2 Sumner 486, 533 ; and an executory agreement to make it a mortgage, equity will enforce by decreeing a legal transfer upon default made.

It is difficult to see how a claim can be made by the creditors of the bankrupt against the equities of the plaintiffs in this transaction. They existed long before the date of the bankruptcy, and it is not alleged that the deposit or pledge was made in the view by either party of an insolvency or bankruptcy.

We have not discussed the case in this opinion, as we deem the reasoning and authorities in the opinion of the Chief Justice fully support his conclusion, and we affirm his decree so far as it goes.

But the defendant assignee is entitled to have this matter closed and the plaintiffs realize upon their security. The decree should contain an order to the plaintiffs to proceed to sell the stock upon such terms as to time of sale, advertisements, etc., as may be agreed upon between them and defendant, and if they cannot agree, either party to have leave to apply to the Court for further direction. And a reference to Henry Smith, a Master of this Court, is ordered to compute the amount due on

the notes, charging interest and allowing for dividends.   And in the result of the sale of the stock not satisfying the claim of plaintiffs, they may be allowed to prove for the remainder against the bankrupt's estate.

*W. R. Castle*, for plaintiffs.

The Defendant in person.