RICHARD P. HALLOWELL *vs.* BLACKSTONE NATIONAL BANK.

Suffolk.    March 20, 1891. — September 3, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Pledge by Partner — Non-performance of Promise — Sale of Collateral — Application of Proceeds to Firm Debt.*

Shares of stock were pledged by a member of a firm to secure a loan to him from a bank, then holding the firm's acceptances. He gave the bank a demand note made out upon a printed form furnished by it, reciting that "on the non-performance of this promise" the bank might sell the stock and apply "the net proceeds to the payment of this note," accounting to him "for the surplus, if any"; and that "such surplus, or any excess of collaterals upon this note," should be applicable "to any other note or claim against me held by said bank." Upon a demand he made partial payments, but failed to pay the residue, requesting the bank to make the balance a time loan, which the bank refused, it being understood, however, that the demand should not be pressed without further notice. This notice the bank gave, and, upon non-payment, sold the stock for an amount sufficient to pay what was due on the note, and leave a balance in its hands. *Held,* that there was a non-performance of the promise contained in the note, which entitled the bank to sell the shares. *Held, also,* that the bank could apply the balance in its hands to the payment of the firm acceptances remaining unpaid.

BILL IN EQUITY, filed in this court on October 4, 1890, to redeem certain shares of stock pledged by Joseph W. Smith to the defendant bank as security for a loan. The case was heard by *Field,* C. J., and was as follows.

On December 3 and 8, 1888, the defendant bank discounted two drafts, amounting to $11,127, which had been accepted by the firm of Glidden and Curtis, of which Smith, as the bank knew, was a member. On December 14, 1888, Smith borrowed $25,000 of the defendant bank and gave therefor his promissory note, and deposited as collateral security the shares in question, which were named in the note and were his individual property. This note, which was signed by Smith, was made out upon a printed form, then commonly used by the defendant bank when lending money on a note with security, and furnished by it and filled up by its president, and was so far as material as follows, the printed words and figures being in Roman letters, and the written in Italics:

"25,000 dollars.    cts.    Boston, Mass., *Dec. 14*, 1888.    On demand, after date, with interest at    per cent, *I* promise to pay to the Blackstone National Bank of Boston, or order, at said bank, *Twenty-five Thousand* $\frac{x}{100}$ Dollars, for value received, having deposited with this obligation as collateral security *149 Shares Smith & Dove Man'g Co.*, *200 Shares Pacific Guano Co.*, with authority to sell the same, or any collaterals substituted for or added to the above, without notice, either at public or private sale or otherwise, at the option of the said Blackstone National Bank, on the non-performance of this promise, said bank applying the net proceeds to the payment of this note and accounting to *me* for the surplus, if any; and it is hereby agreed that such surplus, or any excess of collaterals upon this note, shall be applicable to any other note or claim against *me* held by said bank."

Shortly before January 3, 1889, the defendant bank demanded payment of Smith, who on that day paid the defendant $5,000, and again on January 5 following $5,000 more, at the same time requesting the bank to make the balance a time loan, which the bank refused, it being understood, however, that the claim should not be pressed without further notice, although the bank retained the right to require the payment of such balance at any time.    On February 7, 1889, Smith made an assignment for the benefit of creditors to the plaintiff, and shortly thereafter notified the defendant bank of that fact.    On March 15 following, the plaintiff offered to pay the balance due on the note, conditioned upon the defendant's surrendering the security; but the defendant refused to do so, claiming the right to hold what was not necessary to pay the note as security for the acceptances of Glidden and Curtis, which it still owned and which were unpaid.    Thereafter, on March 26, the defendant, having demanded payment of the plaintiff, which was refused because it would not deliver up such security, sold the stock of the Smith and Dove Manufacturing Company for $17,898.63, which was a fair market price.    There was no objection made to the sale, if the bank had the right to sell the stock.    After paying the note, with interest and the expenses of the sale, there was left a surplus of $2,568.88 in the hands of the defendant, together with the shares of the stock of the Pacific Guano Company.

Upon these facts, the judge ruled that there was a non-per-

formance of his promise by Smith; that the bank therefore had a right to sell the stock, and that the plaintiff's offer to pay, being conditional upon a surrender of the security, was not sufficient to enable him to maintain this bill on his contention that there had been no non-performance of Smith's promise; and the plaintiff excepted.

The judge then reported the case for the consideration of the full court, upon the question whether, by the terms of the note, the surplus proceeds of the stock sold and the stock remaining unsold, or either of them, might be applied by the defendant to the acceptances, and also upon the question raised by the plaintiff's exception; such decree to be entered as justice might require.

The case was argued at the bar in March, 1891, and afterwards, in September following, was submitted on the briefs to all the judges except *Field*, C. J.

*J. B. Warner*, for the plaintiff.

*F. E. Fitz*, for the defendant.

HOLMES, J.   This is a bill to redeem certain stock given by one Smith, the plaintiff's insolvent, to the defendant, as collateral security for a loan to Smith.   The main question is whether the defendant can hold the stock as security not only for the loan mentioned, but also for two acceptances of a firm of which Smith was a member, which acceptances the defendant had discounted before the date of the loan in question.   The note given by Smith for the loan authorizes the defendant to sell the stock " on the non-performance of this promise, said bank applying the net proceeds to the payment of this note and accounting to me for the surplus, if any."   It then goes on, — and these are the important words, — " and it is hereby agreed that such surplus, or any excess of collaterals upon this note, shall be applicable to any other note or claim against me held by said bank."

The counsel for the plaintiff based his argument on the proposition that the right to apply the excess of collaterals to any other note or claim was conditional upon Smith's non-performance of his promise.   We think it doubtful at least whether that is the true construction of the words which we have quoted.   We are disposed to read the agreement as an absolute pledge or mortgage of the securities for other notes and claims.   But if this be not so, we are of opinion that Smith did not perform his promise

within the meaning of the note.   The bank demanded payment of Smith on January 3, 1889, and he made partial payments, but failed to pay the residue, and requested the bank to make the balance a time loan, which the bank refused.   This was a non-performance of his promise by Smith.   It is true that the report states that it was understood that the demand should not be pressed without further notice. . But this did not take away the effect of the breach.   It merely called on the bank to give notice before taking further steps, such as selling the security, and this it did.   We neither construe the report as meaning, nor do we infer from it, that the breach of Smith's promise by his failure to pay on demand was waived by the bank.   On January 3, if not before, the bank's right vested to apply any excess of collaterals upon other claims.

The question remains whether the bank is entitled to hold the security for the bills which were accepted by Smith's firm, and not by him individually.   It cannot be denied that the acceptances were " claims against him," or that the words used in his note were broad enough to embrace firm acceptances unless there is some reason in the context, the circumstances, or mercantile practice, to give them a narrower meaning.   *Singer Manuf. Co.* v. *Allen*, 122 Mass. 467.   *Chuck* v. *Freen*, Mood. & Malk. 259. If Smith had had private dealings and a private account with the bank as a depositor, and his firm also had had dealings and an account there, and Smith had given security in the terms of his note in order to be allowed to overdraw or to obtain a discount, it may be that the generality of the language would be restrained to the line of dealings in the course of which it is used.   *Ex parte M'Kenna ( City Bank case)*, 3 DeG., F. & J. 629. See Lindl. Part. (5th ed.) 119, and note.   But we are called on to construe a printed form·used by the bank and presented by it for those who borrow from it to sign.   The question is what is the reasonable interpretation of such words, when insisted on as a general formula to be used by would be borrowers, irrespective of any special course of business of the particular person who signs it, which, for the matter of that, there does not appear to have been in this case.   For all that appears, the note mentioned may have been the only transaction that ever took place between the defendant and the plaintiff's insolvent alone.

The printed form, it may be assumed, would have been used by the bank equally in a case where the borrower was the principal man in his firm and the only one known to the bank, was borrowing for his firm daily, and had never borrowed for himself but in this instance, and in a case where the borrower's membership in a firm whose notes the bank held was unknown. This being so, in the opinion of a majority of the court there is no sufficient reason for not giving the words their full legal effect. The clause pledging the property for any other claims against the debtor is not inserted with a view to certain specific debts, but as a drag-net to make sure that whatever comes to the creditor's hands shall be held by the latter until its claims are satisfied. Cory on Accounts and Lindley on Partnership have made it popular to refer to a mercantile distinction between the firm and its members. But we have no doubt that our merchants are perfectly aware that claims against their firms are claims against them, and when a merchant gives security for any claim against him and there is nothing to cut down the literal meaning of the words, he must be taken to include claims against him as partner.

*Decree accordingly.*