# THE NATIONAL SAFE DEPOSIT, SAVINGS AND TRUST COMPANY

*v.*

# GRAY.

---

PLEDGES; NOTICE; STOCK CERTIFICATES, TRANSFER OF.

1. Where a stock certificate, with a written transfer and power of attorney thereon in blank, signed by the person to whom the certificate was issued, is pledged by a person in possession thereof to secure an advance of money made to him at the time, and also to secure pre-existing debts, the pledgee is not chargeable with notice of any equities existing between the original owner and the pledgor.
2. But the original owner of the pledge is entitled, under such circumstances, to redeem it by payment of the money advanced when the pledge was made, regardless of the pre-existing debts due the pledgee from the pledgor, unless the pledgee shows he changed his position to his prejudice in relation to such pre-existing debts on the faith that the pledgee was the real owner of the certificate.

No. 700. Submitted November 19, 1897. Decided February 24, 1898.

HEARING on an appeal by the defendant from a decree

granting the prayers of a bill to redeem a certificate of stock. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. R. Ross Perry & Son* for the appellants:

1. The transfer of a stock certificate with a blank power of attorney, signed by the transferrer, can not properly be made equivalent only to the assignment of a mere chose in action. Owing to the nature of stock and the necessities of trade and convenience of commerce, such a transaction approximates a transfer of negotiable paper in its incidents and consequences. It has a *quasi*-negotiable quality. The delivery of such a certificate to a person, with a power of attorney endorsed upon it in blank, enables it to pass from hand to hand by mere delivery, and enables the final purchaser, who wishes to perfect his legal title, to do so by appointing an attorney to make the transfer to him on the books of the corporation—that is to say, by filling out the blank. Thompson on Corporations, Sec. 2589; Morawetz on Private Corp. (2d Ed.), Secs. 185, 192. This view finds support in the decisions of the Supreme Court of the United States. *Bank* v. *Lanier*, 11 Wall. 369. See, also, *Supply Ditch Co.* v. *Elliott*, 10 Colo. 327; *Kortright* v. *Bank*, 20 Wend. 90; *Matthews* v. *Bank*, 1 Holmes, 405; *Leitch* v. *Wells*, 48 N. Y. 613; *Johnston* v. *Laflin*, 103 U. S. 804.

2. The transfer of certificates of stock, together with the power of attorney endorsed in blank, gives the transferrer all the *indicia* and muniments of title and acts as an estoppel on the transferrer to dispute such title against a *bona fide* purchaser for value. Thompson on Corporations, Sec. 2589. The leading case on this proposition, containing the precise point involved in this case—the wrongful subpledge by a pledgee—is *McNeil* v. *Bank*, 46 N. Y. 325. All the previous cases were there collected and elaborately discussed, and it was held that since the certificate was in such a form as to clothe the original pledgee with all the appearances of

ownership, the holder who took it from him for value could not be compelled to surrender it to the actual owner, until he had been paid the full amount of his loan to the original pledgee. See, also, *Fatman* v. *Loback*, 1 Duer, 354; *Prall* v. *Tilt*, 28 N. J. Eq. 479. A further discussion of this point would seem to be rendered unnecessary by the decision of the Supreme Court in the case of *Cowdrey* v. *Vandenburgh*, 101 U. S. 572. See, also, *Williams* v. *Fletcher*, 129 Ill. 356; *Winter* v. *Gas Light Co.*, 89 Ala. 544; *Brewster* v. *Sime*, 42 Cal. 139; *Stinson* v. *Thornton*, 56 Ga. 377; *Mount Holley Co.* v. *Ferrie*, 17 N. J. Eq. 119; *Walker* v. *Transit Co.*, 47 Mich. 339; *Bell* v. *Woodward*, 42 Pac. R. (Cal.) 1085.

3. A provision in the charter or bylaws of a corporation, that shares shall be transferable only on the books of the company, is intended solely for the benefit and protection of the corporation, and does not enure to the benefit of third parties or even of the shareholders. *McNeil* v. *Bank*, 46 N. Y. 331; *Mount Holly Co.* v. *Ferrie*, 17 N. J. Eq. 117; *Johnston* v. *Laflin*, 103 U. S. 800; *Driscoll* v. *Mfg. Co.*, 59 N. Y. 96; *Bullard* v. *Bank*, 18 Wallace, 589; *United States* v. *Vaughan*, 3 Binney, 394; *Kortright* v. *Bank*, 20 Wendell, 90; Morawetz on Corporations, Sec. 197.

4. Independently of the foregoing considerations, the undisputed testimony in this case is that, by the custom of the District of Columbia and the leading commercial cities of this country, certificates of stock endorsed in blank pass from hand to hand by delivery. This custom will be recognized by the law. Thompson on Corporations, Sec. 2589. *Kortright* v. *Bank*, 20 Wendell, 92; *McNeil* v. *Bank*, 46 N. Y. 331; *Railroad Co.* v. *Schuyler*, 34 N. Y. 41.

5. Where stock is pledged to a bank as security for the payment of any demands it may from time to time hold against a person, the terms include all demands the bank holds against him at the time, as well as all future demands. *Bank* v. *Hall*, 83 N. Y. 338; *Douglass* v. *Reynolds*, 7 Pet. 113; *Agawam Bank* v. *Strever*, 18 N. Y. 502.

6. Certificates of stock, with a power of attorney endorsed in blank, are so far negotiable as to make one who takes them as security for antecedent debts a holder for value. There is the same practice in this regard with respect to them and negotiable paper in the commercial and banking world generally; certainly the practice is such in this city, as shown in this case by uncontradicted testimony. See, *Bank* v. *Lanier,* 17 Wall. 369; *Matthews* v. *Bank,* 1 Holmes, 405; *Leitch* v. *Wells,* 48 N. Y. 613; *Thompson* v. *Toland,* 48 Cal. 99; *Winter* v. *Mining Co.,* 53 Cal. 428; Colebrooke on Collateral Securities, 559.

7. By analogy, the rule applicable to negotiability of railroad and municipal bonds should be applied. Bonds with coupons payable to bearer are negotiable securities and pass by delivery, and have all the qualities and incidents of commercial paper. *Roberts* v. *Bolles,* 101 U. S. 119; *Ottawa* v. *Bank,* 105 U. S. 342; *White* v. *Railroad Co.,* 21 Howard, 575; *McMurray* v. *Moran,* 134 U. S. 150.

8. The rules relating to negotiability of bills of lading, warehouse receipts *et al.,* should be applicable. *Leask* v. *Scott,* 2 Q. B. D. 376; *Mill Co.* v. *Despatch Co.,* 27 Fed. R. 434; *Railroad Co.* v. *Bank,* 102 U. S. 14; *Lee* v. *Kimball,* 45 Me. 172; *Bank* v. *Harris,* 77 Md. 423; *Conrad* v. *Fisher,* 37 Mo. App. 352.

9. Whatever the law may be in the case of certificates of stock pledged as collateral security for antecedent debt, there is certainly sufficient consideration, when they are pledged not only for the antecedent debt, but for a new consideration advanced at the time. *Bank* v. *Taylor,* 53 Fed. R. 863; *Glidden* v. *Hunt,* 24 Pick. 221; *Swift* v. *Tyson,* 15 Pet. 1; *Hallowell* v. *Bank,* 154 Mass. 359.

*Mr. Samuel Maddox* for the appellee:

1. If Gleason's recollection of the interview between himself and Mr. Snyder in November, 1892, when the paving stock certificate was pledged with appellant company, is correct, there is no basis for the claim now asserted by that

company to hold the certificate for other obligations of Gleason. *Bank* v. *Livingston*, 74 N. Y. 223.

2. But even if Mr. Snyder's recollection of what occured at that interview is correct, there were yet sufficient facts and circumstances attending the transaction to put him on notice, and appellant company will be held to a knowledge of everything of which proper inquiry would have informed it. Gleason had been a frequent borrower from the appellant company on collateral security, but he had never before tendered a stock certificate that was not made out in his name. The paving stock certificate, when pre-sented to appellant company by Gleason, showed earmarks of Gray's ownership. It had not been assigned to any person nor were any of the blank spaces filled up in the form of transfer on the back. It was in the possession of one who did not make a business of dealing in stocks.

3. Gleason did not make the contract as contended for by appellant company, pledging Gray's certificate for any other obligation than the loan of one thousand dollars nego-tiated in November, 1892. It is not disputed that he signed a promise to pay $1,000 and a writing annexed to this promise that Gray's certificate "shall be applicable in like manner to secure the payment of any past or any future obligation of the undersigned held by said company." And were appellant company proceeding against Gleason he would be estopped from setting up any other or different contract from that so evidenced by the writing. But no such estoppel operates on Gray. Greenleaf on Evidence, Sec. 279; *Krider* v. *Laffert*, 1 Wharton, 31; *Reynolds* v. *Magness*, 2 Ired. L. 31.

4. However general the terms may be in which an agreement is conceived, it only comprehends those things in respect to which it appears that the contracting parties propose to contract; and not to others they never thought of. *Case* v. *Cushman*, 3 Watts & S. 544; *Snyder* v. *Leibengood*, 4 Pa. St. 308. The matter in hand is always presumed to

be in the mind and thoughts of the speaker, though his words seem to admit a larger sense; and therefore the generality of the words used shall be restrained by the particular occasion. It is a rule of law, as well as of ethics, that where the language of the promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. *Hoffman* v. *Insurance Co.*, 35 N. Y. 412. A security can be retained only for the debt or duty to which, by agreement of the parties, it was appropriated. *Fullerton* v. *Bank*, 40 N. Y. Sup. 874.

5. Until after actual notice from Gray that he owned the paving stock certificate, appellant company did not part "with any right or thing of substance," except only the sum of $1,000, "nor come under a binding agreement to postpone or delay the collection of its demand" against Gleason. As against Gray, the company can not hold the paving stock certificate to secure the payment of pre-existing debts owing it by Gleason. *Taliaferro* v. *Bank*, 71 Md. 200; *Savings Bank* v. *Renshaw*, 78 Md. 475; *France* v. *Clark*, L. R. 22 Ch. Div. 830.

It has been repeatedly held that, except only in the case of negotiable commercial paper, the transfer of property as security for antecedent debt does not constitute the taker a *bona fide* holder for value as against prior equities. *Savings Bank* v. *Bates*, 120 U. S. 556; *Weaver* v. *Darden*, 49 N. Y. 286; *Gould* v. *Trust Co.*, 23 Hun, 324.

Mr. Justice COLE, of the Supreme Court of the District of Columbia, who sat with the court in the hearing of this cause in the place of Mr. Justice MORRIS, delivered the opinion of the Court:

This is an appeal from a decree of the Supreme Court of this District made in an equity case, wherein the appellee, William Bruce Gray, was complainant, and the appellant, the National Safe Deposit, Savings and Trust Company, and Albert Gleason were defendants.

The bill prayed, amongst other things, a decree requiring the appellant to permit the appellee to redeem from it a certificate for twenty shares of the capital stock of the Cranford Paving Company, of which he alleged he was and is the owner, upon payment to it of the amount remaining unpaid of the sum advanced by appellant to said Gleason on the faith of said certificate of stock, which the bill alleges that Gleason unlawfully pledged to said appellant for money borrowed by him of it. The appellant resisted this prayer on the alleged ground that the said Gleason owed it other large sums of money, and that by the terms of the contract between it and Gleason it had the right to hold said stock as security for the same.

The court below granted the said prayer of appellee, and the appellant appealed. The principal facts, about which there is no controversy, appearing by the pleadings and evidence are as follows:

On the — day of November, 1892, the appellee borrowed of Gleason $500 and gave him his note therefor and the said certificate of stock as collateral thereto; that on the 29th day of November, 1892, Gleason borrowed from the appellant $1,000 and gave his note and pledged said certificate of stock as collateral for the repayment thereof; that on January 3, 1893, this note was renewed and the stock pledged for the payment of the new note; that on the 11th day of April, 1893, and before the last-mentioned note matured, Gleason borrowed $1,000 more from the appellant and pledged said stock for the payment of that also; that this last-mentioned note was paid June 2, 1893; that on August 5, 1893, the note of January 3, 1893, was renewed for $900, Gleason paying appellant $100 and accrued interest, the stock remaining pledged for the payment of the $900 note; that Gleason made payments on this note from time to time, and when the bill in this case was filed there was due the appellant on account of it $750.

The collateral notes given by Gleason for each of the aforesaid loans were in accordance with the form in gen-

eral use by appellant and other banks in this country. The $900 note was given in evidence, and is as follows:

"$900.            WASHINGTON CITY, D. C., Aug. 5, 1893.

"Thirty days after date I promise to pay to the National Safe Deposit, Savings and Trust Company of the District of Columbia, or order, nine hundred dollars, for value received, with interest at the rate of six per cent. per annum until paid, having deposited with it as collateral security certificate No. 81 for twenty shares capital stock of the Cranford Paving Company in the name of William Bruce Gray and assigned by him, and do agree, on demand of the said company, to deposit with it such additional security as it may from time to time require, and in default thereof this note may, at the option of the holder of the note, be deemed instantly due and payable as though it had actually matured, and upon default of payment at maturity, whether such maturity occur by expiration of time or default in depositing additional security as above agreed, do hereby authorize and empower the said company, for the purpose of liquidation of this note, and of all interest and costs thereon, to sell, transfer and deliver the whole or any part of such security, or any addition thereto, or substitute therefor, without any previous demand, advertisement or notice, either at brokers' board or public or private sale, at any time or times thereafter, with the right on the part of the said company to become the purchaser and absolute owner thereof free of all trusts and claims.    And I do further agree that the securities hereby pledged, together with any that may be pledged hereafter, as aforesaid, shall be applicable in like manner to secure the payment of any past or of any future obligations of the undersigned held by the said company, and all such securities in its hands shall stand as one general continuing collateral security for the whole of said obligations, so that the deficiency on any one shall be made good from the collaterals for the rest, and I do hereby agree to remain responsible for any deficiency in

payment, waiving any benefit, exemption or privilege under any law now or hereafter to be in force.

"And I do further agree that should any litigation ensue to said company with respect to the collection of the said note or the holding or sale of the said collateral security or any part thereof, the said company shall be paid such reasonable counsel fees as it shall have paid to its attorney for the conduct of such litigation, which sum shall be also secured by said collateral securety, and· be payable on demand of said company, in default of which payment said collateral security may be sold as is hereinbefore provided, and I do hereby promise to pay to said company any deficiency resulting from the inadequacy of said collateral security in this respect.

"(Signed)                    ALBERT GLEASON.    [Seal]

"Address : ———."

That the certificate of stock and the assignment or endorsement thereon when first presented to appellant were as follows :

"Capital, $500,000.

Number 81.                                        Shares, 20.

The Cranford Paving Company.

Incorporated under the laws of the State of West Virginia.

This certifies that William Bruce Gray is entitled to twenty (20) shares in the capital stock of the Cranford Paving Company, not subject to assessment, transferable on the books of the company, in person or by attorney, on the surrender of this certificate.

Witness the seal of the company and the signature of the president and of the secretary, at Washington, D. C., this fifth day of January, A. D. 1892.

*5,000 shares.*      *Shares, $100 each.*

H. L. CRANFORD, *President.*

H. L. HOUGHTON, *Secretary.*

[SEAL.]

Full-paid and non-assessable.

For value received,— hereby sell, assign, and transfer to ——— ——— shares of the within stock and irrevocably constitute and appoint ——— ——— attorney to transfer the same on the books of the company, with full power of substitution.

Witness my hand and seal this 8th day of June, 1892.

WM. BRUCE GRAY.  [L. S.]

In presence of—

RALPH L. GALT."

That as a result of other loans made by appellant to Gleason prior to the original loan of $1,000 on the Cranford Paving Company stock, the said Gleason, at the time of the loan of the $1,000 on the 29th day of November, 1892, owed the appellant $7,750, secured by 148 shares of the capital stock of the Ivy City Brick Company and 10 shares of the capital stock of the Franklin Insurance Company; that the form of notes given for these former loans was the same as that hereinbefore given; that during the pendency of this suit the two last-mentioned stocks were sold and the proceeds applied towards the payment of the loans for which they were pledged, leaving a balance due on those loans at the time of the decree appealed from of about $6,500, for which it has no security, unless it be entitled to hold the Cranford Paving Company stock as security therefor as well as for the $750 balance due on the $900 note. The precise value of the last-mentioned stock is not shown, but it is worth much more than $750.

Thus far there is no controversy about the material facts : but the appellee claims and alleges in his bill that at the time said Gleason borrowed the first $1,000 on the certificate of stock in controversy he informed the officer of appellant with whom the business was transacted that the certificate belonged to another person, for whose accommodation he was borrowing the money, and that this was sufficient to put appellant upon inquiry as to the title of Gleason, and that it is therefore chargeable with notice of equities between

appellee and Gleason. Appellant's answer, sworn to by the officer with whom the transaction took place, denies positively this allegation of the bill. The burden, therefore, was upon appellee to prove the allegation by at least two witnesses, or one witness and corroborating circumstances, and he has not sustained that burden. The only witness he examined upon that point was the said Gleason, and the only circumstance relied upon to corroborate his evidence is the fact that the certificate was in the name of appellee. But the certificate was endorsed in blank, and it is matter of common knowledge amongst business men dealing in such securities, as shown by the uncontroverted evidence in the record, that this kind of property is customarily sold or pledged in this form, passing through many hands without having the stock transferred on the books of the corporation issuing it, and a new certificate issued to the transferee. So that the fact relied upon constitutes no corroboration of Gleason's evidence upon the question of notice to appellant. See *Johnston* v. *Laflin*, 103 U. S. 804. Besides, the testimony of Gleason is much weakened by the conflict between him and appellee upon this point. Appellee alleges in his bill that Gleason had no authority from him to pledge the stock for any sum, while Gleason states in his sworn answer, as well as in his testimony as a witness, that he had authority from appellee to pledge it to the amount of $1,000; and Gleason also admits that he pledged it for $1,000 more than he claims to have been authorized to do. In addition to these considerations, Mr. Snyder, the president of appellant, the officer to whom Gleason says he gave the information that he was not the owner of the stock, testifies positively, both on direct and cross-examination, that Gleason gave him no such information. The court below was therefore clearly right in resolving this question of fact against the appellee. It must accordingly be considered as established in addition to the admitted facts that the appellant had no notice or knowledge that appellee was the owner or had

any interest, equitable or otherwise, in the certificate of stock in controversy.

The foregoing being the state of the facts, counsel for appellant assign as error that the court "erred in holding that the appellee was entitled to redeem the certificate of stock in question upon the payment by him to the appellant of the sum of money actually loaned by it at the time the said certificate was pledged to the appellant. It further erred in deciding that the appellant was not entitled under its express agreement with the pledgor to hold the same certificate as security for the current indebtedness of the pledgor to the appellant."

Upon this assignment of error, in view of the facts hereinbefore stated, two questions arise:

1. Can a person in possession of a certificate of stock like the one in controversy, with a written transfer and power of attorney thereon in blank, signed by the person mentioned as the owner on the face of the certificate, transfer to a third person, who has no notice or knowledge of any equities existing between the original owner and said holder, a greater interest therein than such holder has?

2. If so, is a pre-existing debt due from the ostensible owner to the transferee sufficient to support such a transfer and defeat the equities existing between the original owner and the party in possession of the certificate?

First. Upon the first proposition the decided cases are not harmonious, though perhaps most of the cases relied upon as supporting the negative of this proposition might be distinguished from the one under consideration. But it is not necessary to examine those cases with that end in view, as the first question has been settled in the affirmative in this jurisdiction by the Supreme Court of the United States. The case of *McNeil* v. *Tenth National Bank*, 46 N. Y. 325, is a leading case in support of the affirmative of the proposition under consideration, and in the case of *Cowdrey* v. *Vandenburgh*, 101 U. S. 572, the Supreme Court refers

with approval to the *McNeil* case in the following language:

"The principle is well settled that when the owner of property in any form clothes another with the apparent title or power of disposition and third parties are thereby induced to deal with him, they shall be protected. The case of *McNeil* v. *The Tenth National Bank*, in the Court of Appeals of New York, contains a clear statement of the law on this head. There, it is true, a certificate of stock was pledged with a blank assignment and power of attorney indorsed, which the pledgee afterwards filled up, and then disposed of the stock. It was evident that the owner contemplated that the blanks in the assignment and power of attorney should be filled up if it ever became necessary.

"But the principle stated by the court is as applicable where no such intention is manifested. The rights of innocent third parties, as the court there observes, 'do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.'"

The later case of *Johnston* v. *Laflin*, 103 U. S. 804, also affirms the same doctrine. The first question, therefore, must be determined in the affirmative.

Second. Will a passed or executed consideration support such a transfer, so as to defeat the equities of the true owner?

The appellant's counsel contend for the affirmative of this proposition, and the argument which they advance in support of it is that certificates of stock like the one in question, with transfer and power of attorney thereon in blank, should be treated as negotiable paper, and that as by the rule of decision of the Supreme Court of the United States a transfer of negotiable paper in payment of or as collateral security for a pre-existing debt is valid as against

equities existing between the maker and payee unknown to the assignor, the same rule should be applied to the stock certificate in this case. But while the courts have held that certificates of stock endorsed in blank by the owner, with blank power of attorney to transfer, are in one sense negotiable, and that the title to the property thereby represented passes by delivery of such certificates where the holder is the owner or has the right to sell, no court, so far as we are aware, has ever held that such securities are negotiable paper or the sale and transfer thereof governed by the law applicable to negotiable instruments. The case of *Bank* v. *Lanier*, 11 Wall. 369, probably goes as far as any case in recognizing the negotiable properties of such an instrument, but in that case the court says that it is not negotiable paper in form or character, and in the case of *The People's Savings Bank* v. *Bates*, 120 U. S. 556, the Supreme Court declined to apply the rule that the transfer by the holder of negotiable paper as collateral security for the payment of a pre-existing debt is valid as against the equities existing between the maker and payee to a mortgage of chattels. After referring to the rule applying to the transfer of negotiable instruments under such circumstances, the court says:

"Do these principles apply to the case of a chattel mortgage given merely as security for a pre-existing debt, and in obtaining which the mortgagee has neither parted with any right or thing of substance nor come under a binding agreement to postpone or delay the collection of his demand? Upon principle and according to the weight of authority, this question must be answered in the negative.

"The rules, established in the interests of commerce, to facilitate the negotiation of mercantile paper, which for all practical purposes passes by delivery as money and is the representative of money, ought not in reason to embrace instruments conveying or transferring real or personal property as security for the payment of money. At any rate,

there is nothing in the usages of merchants, as shown in this record or so far as disclosed in the adjudged cases, indicating that the necessities of commerce require that chattel mortgages be placed upon the same footing in all respects as negotiable securities which have come into the hands of a *bona fide* holder, for value, before their maturity. Such a result, if desirable, must be attained by legislation rather than by judicial decisions."

The words "instruments conveying or transferring real or personal property as security for the payment of money," used in the above quotation, are as applicable to certificates of stock and the transfer thereof as to a chattel mortgage. The former are in all essential particulars similar to the latter, in so far as they are evidence of a right in or title to personal property, and there is no reason why the rule that applies to the one should not with equal force apply to the other, and the character of the property to which each instrument relates is the same.

Stress is laid in argument for appellant upon the following words in the above quotation: "At any rate, there is nothing in the usages of merchants, as shown in this record or so far as disclosed in the adjudged cases, indicating that the necessities of commerce require that chattel mortgages be placed upon the same footing in all respects as negotiable securities," etc., and it is contended that there is proof of custom among merchants in this record which should control the case. But if it should be admitted that custom could control the point under consideration, the appellant's case would not be aided by it, as the only proof upon the question is that certificates of stock are customarily transferred by blank endorsements and powers of attorney, whether the transaction be an absolute sale or a pledge as collateral security, a principle recognized by the adjudged cases in this jurisdiction, as heretofore shown; but there is no proof in this record that the custom of merchants recognizes the right of a holder of certificates of stock so endorsed

to pledge them as collateral for a pre-existing debt regardless of whether he has title to them as matter of fact, which is the principle contended for.

All the authorities agree that the right of a transferee of certificates of stock endorsed in blank, who, without notice of the true state of the title, takes them from a person who has the manual possession thereof, but not the title to hold them as against the true owner, is based upon the doctrine of equitable estoppel.

In this case there are no contract relations, express or implied, between appellant and appellee. It being shown that appellee is and was at the time it was pledged to appellant the equitable owner of the stock in question, the only ground upon which appellant can claim to withhold the property from appellee is that he is now estopped to deny that Gleason had the title to it indicated by the assignment and power of attorney signed by appellee; and it is a familiar principle, that to enable the party alleging equitable estoppel to avail himself of it he must show that, relying upon the truth of the representations which work the estoppel, he changed his position to his disadvantage, so that it would be a fraud upon him to permit the party estopped to show that his representations were not true. *Railway Co.* v. *Dubois,* 12 Wall. 64; *Branson* v. *Wirth,* 17 Wall. 42; *Ketcham* v. *Duncan,* 96 U. S. 666.

This necessitates an inquiry into the consideration of the transfer of the certificate of stock in question by Gleason to appellant, and whether appellant changed its position to its prejudice in relation to its pre-existing debt on the faith that Gleason was the owner of the stock. The written contract between Gleason and appellant, in relation to this stock shows that Gleason agreed that appellant might hold the certificate as collateral, not only for the payment of the sum advanced by it on the credit of the stock, but also for any and all sums previously borrowed or subsequently to be borrowed by him. The collateral note, which is the only contract of

the parties to it in relation to the stock in question, does not indicate whether there was at that time any other indebtedness of Gleason to appellant, and therefore does not prove or tend to prove that appellant acted to its prejudice upon the faith of appellee's representation that Gleason was the owner of the stock, except to the extent of the advances made on the credit of said stock. To determine whether there was a pre-existing indebtedness or not, and, if so, whether appellant changed its position in relation thereto because of the belief of its officers that Gleason was the owner of the stock, resort must be had to the other evidence in the record. If there were no evidence in the record upon the subject other than the note by which Gleason pledged the stock in question, appellee would clearly be entitled to redeem his stock on payment to appellant of the balance due on the $900 note. But appellant gave in evidence three other notes of Gleason bearing date in August, 1891, aggregating $7,750, each of which is in the same form as the $900 note, and proved that they remained unpaid at the date of the last-named note. These notes show an existing indebtedness of Gleason to appellant at the time he gave the several notes pledging the stock in question, and the notes, taken together, prove that he pledged the certificate of stock in question not only for the payment of the advances made, but also for the pre-existing debt; but these last three notes, like the others, have no tendency to show that the appellant changed its position to its prejudice in relation to the pre-existing indebtedness, or that the fact that the stock in question was worth more than the money loaned on it was any inducement to it to enter into the transaction. It follows that to make a case that would entitle the appellant to hold the stock as collateral to the pre-existing indebtedness on the ground of equitable estoppel, resort must be had to the oral proof. Nor is such proof incompetent or inadmissible, as was suggested in argument, as tending to vary or control the written contract. The only tendency of the oral proof is to show

Gleason's conversations and transactions with the officers of appellant, and their conduct and declarations in relation to the pre-existing loans to Gleason, and it has no tendency to vary, contradict, or in any measure control the written contracts between appellant and Gleason. The only object and tendency of it is to show whether the contracts between Gleason and appellant can, through the doctrine of estoppel, be rendered binding upon the appellee so far as they relate to the antecedent debts. If facts had been recited in the $900 note which would have amounted to an estoppel, and appellee had given evidence tending to show the non-existence of any such facts, then the question discussed at the bar would have arisen. But the record makes no such case.

The case of *Hallowell* v. *Bank*, 154 Mass. 359, cited by appellant's counsel, does not decide the point in controversy in this case. In that case Hallowell gave a collateral note to the bank in form and substance like the one in this case, pledging certain collaterals for the payment of that note and the surplus, if any, to any then existing or subsequently incurred indebtedness of his to the bank. At the time he gave that note there was an existing indebtedness to the bank by a firm of which he was a member, and the question decided in that case was that under the terms of the collateral note the bank had the right to apply the surplus arising from the sale of the collaterals and payment of the note to the firm indebtedness. It involved the construction of the contract between Hallowell and the bank, and not the question of estoppel as between it and a person who claimed to be the owner of the pledged collateral.

A consideration of all the oral evidence in the record fails to prove that appellant was induced to do anything in relation to the pre-existing indebtedness to its prejudice in consequence of the belief of its officers that Gleason was the owner of the paving stock. On the contrary, Mr. Snyder, the president of appellant, testifies as a witness

that when he made the first transaction in relation to this stock, in November, 1892, he was entirely satisfied with the security he had for the then existing indebtedness of Gleason, and the fact that appellant afterwards, in April, 1893, loaned Gleason an additional $1,000 on the stock in question without asking any other security shows conclusively that the fact that appellant obtained by the original loan of $1,000 a security largely in excess of the amount loaned was no consideration or inducement to its officers to enter into the transaction.

The final transaction in relation to this stock on August 5th, 1893, when Gleason paid $100 on the $1,000 and renewed for $900, was but a continuation of the original transaction, and there was no change of position of appellant in relation to the old debt; no surrender of securities, no agreement to extend the time of payment or other agreement whatever in relation thereto. The evidence fails to show any agreement whatever to extend the notes securing the old debt until December, 1894, several months after appellant had been notified of appellee's claim to the stock. It is true that Mr. Snyder testifies that the appellant would not at any time after the last of May or early in June, 1893, have surrendered the paving stock on payment of the specific loan made on it, though they would have done so at any time before that date; but this fact can not affect the question. The question is not what they would have done, but it is, in the language of the Supreme Court in the case of *Savings Bank* v. *Bates, supra,* whether the appellant parted with any right or thing of substance or came under any binding agreement to postpone or delay the collection of its demand on the faith of the representation that the stock in question was the property of Gleason. So far from establishing this fact, the evidence in the record proves the contrary. It accordingly appears that the only thing which appellant did to its prejudice, on the faith of appellee's representation that Gleason was the owner of the stock, was

to loan him $2,000, and it follows that all appellant can claim of appellee as a condition of redeeming his stock is the payment of the balance remaining due it on that debt; and, as the court below proceeded in accordance with this principle, it follows that its decree must be *affirmed, with costs.*