B. L. MARX, ADMINISTRATOR OF THE ESTATE OF
J. W. WINTER, Deceased, v. PHOEBE A. PAR-
MELEE.

B. L. MARX, ADMINISTRATOR OF THE ESTATE OF
J. W. WINTER, Deceased, v. BISHOP & COMPANY.

ORIGINAL SUBMISSIONS.

SUBMITTED MARCH 28, 1901.        DECIDED JUNE 27, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A endorsed a certificate of stock in a corporation and delivered to B as
a pledge to secure the payment of note and interest, also gave to
pledgee a power authorizing the sale of stock if default was made
in payment of debt at maturity. No new certificate was demanded
or issued nor was the transaction recorded in the stock book of the
corporation. A died intestate and insolvent. His administrator
claims the right to the possession of the stock from the pledgee
without paying the debt the stock was pledged to secure.

*Held*, that by the endorsement and delivery of the certificate of stock
with the power of sale the legal title to the stock passed to the
pledgee and that the pledgee has the right to sell the stock and
apply the proceeds to the payment of the debt, interest and costs,
accounting to the administrator for the excess, if any,

*Held*, also, that Section 2016, Civ. L. 1897, relating to the transfer of
stock in corporations and prescribing as prerequisites to a valid
transfer of stock, except as between the parties, that either the
certificate be surrendered and a new one issued to the transferee,
or that the transaction be recorded in the stock books of the cor-
poration, was enacted particularly for the benefit of corporations
and corporation creditors, and does not prevent a stockholder from
selling or pledging his stock or passing title thereto, without com-
plying with the terms of said statute, at least, against the claim
of the pledgor's administrator.

OPINION OF THE COURT BY GALBRAITH, J.
(Perry, J., dissenting.)

The facts in these two cases being similar and the law question involved being the same in each case, they were argued and submitted together.

In the first case the pertinent facts as disclosed by the submission are as follows, to wit: That Marx, the plaintiff, is the duly appointed administrator of J. W. Winter, deceased; that Winter during his lifetime executed and delivered to Hollister and Company, a partnership, his promissory note for $2,000 and deposited with the payee of said note as a pledge and as collateral security for the payment of the amount thereof and interest, Certificate No. 42, for thirty shares of the capital stock of the Hollister Drug Company, Limited, a corporation; that said stock was owned by Winter and the certificate was in his name and was endorsed in blank before delivery to the pledgee; that attached to said note and signed by said Winter was a written power or agreement; that this writing after reciting that said certificate of stock was held by said Hollister & Company for the purpose of securing the payment of said note and interest, provided that if the said note and interest were not paid at maturity, "I hereby irrevocably authorize and empower said Hollister & Company, or their assigns, to sell and dispose of the above described property or any part thereof at public or private sale, with or without previous notice to me of any such sale, and from the proceeds arising therefrom to pay the principal, interest, charges and the costs of sale, and the balance, if any, to pay over to me or my representatives, upon demand." And also provided that if the principal and interest of the note should be paid that the certificate should be returned to Winter. Hollister & Co. assigned the note to the defendant Parmelee and delivered the same with the power to her and that she is now the owner and holder of the note; that no new certificate was issued nor was any entry or record of the pledge of the stock made in the stock book of the Hollis-

ter Drug Company, Limited; that the note has not been paid and that there is now due thereon the sum of $2406; that her claim for said amount against the estate of said J. W. Winter has been presented to the administrator and allowed; that the estate of said Winter is insolvent and that the administrator now claims the possession of said certificate of stock and the right to sell the same for the benefit of all of the creditors of said estate.

The following questions of law are propounded:

1. "In whom does the legal title to said shares of stock stand?

2. Is the plaintiff, as such administrator, entitled to the possession of said shares of stock, and has he the right to sell the same for the equal benefit of all the creditors?

3. Is the defendant to be regarded as a secured creditor, with the right to sell said collateral security for the satisfaction of her own claim?"

The facts in the second case are practically the same except that they show that on April 20, 1900, Winter borrowed of Bishop & Co. the sum of $3100 and executed his note therefor due six months thereafter and with said note executed a written contract reading in part as follows: "Be it remembered that I, the subscriber, in consideration of three thousand one hundred dollars loaned to me by Bishop & Company, on the terms stated in the foregoing promissory note, have sold and do hereby sell, assign, transfer and convey to the said Bishop & Co. and their assigns as a pledge sixty shares of the capital stock of the Hollister Drug Company, Limited, represented by Certificates Nos. 43, 44, 45 and 46, on the terms and for the purposes following, viz., as collateral security for the payment of the above promissory note and all other notes and demands which the said Bishop & Co. hold or may hold against me so long as they shall hold the said security; and with full authority to the said Bishop & Co. and their assigns to collect, assign or transfer and to sell the said security or any part thereof

* * * whenever any such note or demand shall be over-due and unpaid." * * *

The said certificates of stock were endorsed in blank before delivery to the pledgee. No new certificates were issued nor was this transaction recorded in the books of the company. The said note has not been paid and there is now due thereon the sum of $3224 and a claim for said amount has been allowed by the administrator.

The same questions of law are presented in this as in the first case.

No claim of fraud is made; nor is it pretended that any one of the parties to either of the transactions did not act in the utmost good faith. It is not denied that Winter had a perfect legal right to pledge the certificates of stock as collateral security for the payment of money borrowed in the manner he did. But it is claimed on behalf of the administrator that the pledgees by their laches and neglect forfeited any claim and right they might have had to hold said stock by failure to comply with the terms of a statute of the Territory. That under Section 2016 of the Civil Laws, 1897, each of the pledgees had a right to present the certificates held to the proper officer of the Hollister Drug Company, Limited, and to have new certificates issued in the name of the pledgee and that failing in this the transfer was void and that the legal title to said stock remained in Winter and at his death passed to and vested in his administrator. And that these pledgees have no standing as secured and preferred creditors but must surrender the securities and take their pro rata of the assets with the other creditors of said estate.

The statute reads as follows: "Whenever the capital stock of any corporation is divided into shares, and the certificates thereof are issued, transfers of the shares may be made by endorsement and delivery of the certificate. The endorsee shall be entitled to a new certificate upon surrendering the old one. And no such transfer shall be valid, except between the parties

thereto, until such new certificate shall have been obtained, or the transfer shall have been recorded on the books of the corporation so as to show the date of the transfer, the parties thereto, their place of abode, and the number and description of the shares transferred." Civ. L. Sec. 2016.

It is contended by the administrator that the statute was intended to protect the creditors of the stockholders as well as the creditors of corporations and that the persons extending credit to stockholders had a right to rely on the stock books of the corporation to obtain reliable information as to the amount of stock such person owned. It is possibly sufficient answer to this argument to state that under the law of this Territory the public has no right to inspect or examine or obtain information from the stock books of private corporations, such books being "open for the inspection of the stockholders and creditors,"—creditors of the corporation and not of individual stockholders. (Civ. L. 1897, Sec. 2021.)

There are decisions of courts the opinions of whose judges are entitled to great respect, that support the contention of the administrator in this case, but the decided weight of authority and the better reason impel us to adopt the more liberal construction, the one more in keeping with the commercial freedom of the age and expressed by the Supreme Court of New York as follows: "It has been settled, by repeated adjudications, that, as between the parties, the delivery of the certificate, with assignment and power endorsed, passes the entire title, legal and equitable, in the shares, notwithstanding that, by the terms of the charter or by-laws of the corporation, the stock is declared to be transferable only on the books; that such provisions are intended solely for the protection of the corporation, and can be waived or asserted at its pleasure, and that no effect is given to them except for the protection of the corporation; that they do not incapacitate the shareholder from parting with his interest, and that his assignment, not on the books, passes the entire legal title to the stock, subject only to such liens or claims

as the corporation may have upon it, and excepting the right of voting at elections," etc. *McNeil v. Tenth National Bank*, 46 N. Y. 331; Angel and Ames on Corporations, Sec. 354; *Seiglcman & Co. v. Brown*, 61 Tex. 117; *Hollowell, Assignee, etc. v. Blackstone National Bank*, 154 Mass. 359.

In the case last above cited the pledge of stock was accompanied by a power similar in language to those under consideration and the court gave full force and effect to the claim of the pledgee against the claim of the assignee in bankruptcy of the pledgor.

"As between the parties to the contract of pledge, the delivery of a certificate of stock, indorsed by the owner with an irrevocable power of attorney to transfer in blank, vests in the pledgee, upon a bona fide advance, the legal title to the shares of stock represented by the certificate, although no notice is given to the corporation issuing the certificate, nor transfer obtained upon its books. It is enough, as between the parties, that the certificate is delivered with authority to the holder or any one he may name, to transfer it upon the books of the company, the consideration for the endorsement and delivery of the certificate being advanced in good faith." Colebrooke on Collateral Securities, Sec. 271.

The United States Supreme Court said on the question: "As between Powell & Co. (the pledgors) and Tome, representing the appellants (the pledgees) the property in the shares of stock undoubtedly passed to the latter without the formality of a transfer on the books of the Watsontown Bank. As collateral security for the payment of their notes, discounted and held by the Cecil National Bank, and with the power to sell for the purpose of payment, the title passed by the delivery of the certificate, with the accompanying power of attorney." *National Bank v. Watsontown Bank*, 105 U. S. 220.

It is not necessary in the cases at bar to go so far in the construction of this statute as the authorities cited would warrant. I am however confident in the opinion that when Winter endorsed and delivered the certificates of stock to the pledgees with the accompanying power of sale, the legal title to the stock

passed from Winter and vested in the respective pledgees; that the only act by which Winter could have reinvested himself with the legal title to the stock, i. e., the payment of the money due, was not performed during his lifetime; that plaintiff, the administrator, took only the title that Winter had at the time of his decease, no more and no less, and now stands in his place; that so far as these actions are concerned the parties are within the exception of the statute (Sec. 2016) the controversy being "between the parties thereto;" that the administrator, even at this time, after default in the payment of these debts, has the right to redeem the stock by payment of the amount of the debts and that, if this is not done, these pledgees have the right to proceed to sell the stock in the manner provided by law and to apply the proceeds to the satisfaction of the debts, accounting to the administrator only for the excess, if any.

It follows that the answer to question No. 1 will be that the legal title to the stock stands in the pledgee and that No. 2 should be answered in the negative, and that an affirmative answer should be returned to No. 3.

Let judgment be entered accordingly.

*B. L. Marx* and *Hatch & Silliman* for plaintiff.

*Holmes & Stanley* and *Kinney, Ballou & McClanahan* for defendants.

### CONCURRING OPINION OF FREAR, C.J.

There is much difference of opinion as to the proper construction and application of a provision that no transfer of stock shall be valid. except between the parties thereto, until a new certificate shall have been obtained or the transfer shall have been recorded on the books of the corporation. Some courts make a distinction between a statutory provision of this kind and a similar provision in the charter or by-laws only. Some base a distinction upon whether there is also a provision that the stock book of the corporation shall be open to creditors of the stockholders or to the public generally or to creditors of the corpora-

tion only. Section 2021 of the Civil Laws does not require that the stock book shall be open to creditors other than those of the corporation. The tendency seems to be on the whole towards holding that provisions of the kind in question are intended for the benefit of the corporation, its creditors and stockholders and not for the benefit of the public or the creditors of the stockholders and that an unrecorded transfer of stock by endorsement and delivery of the certificate is valid as against all but *bona fide* takers for value without notice. Among the various grounds assigned for this view probably the most effective is the quasi-negotiable character of stock certificates and the desirability from a commercial standpoint of having the buying and selling of stocks as free and safe as possible.

Whether an attaching creditor would have priority over a transferee in the case of an unrecorded transfer is a question upon which there are a good many authorities on each side, some writers contending that the weight of authority and reason is in support of the view that even such creditors would not have such priority. See Cook, Stock and Stockholders, Sec. 486 *et seq.* But as to general creditors who have not actually acquired any lien on or interest in the stock there seems to be less question. The question here is whether an administrator of a decedent's insolvent estate is to be regarded as representing the decedent or the general creditors and, if the latter, whether he has priority against a transfer by indorsement and delivery of the certificate by the decedent in his life time not in contemplation of insolvency to one who took in good faith and for value. The view that the transfer would hold good in such a case seems to have been practically adopted in this jurisdiction in the case of *Castle & Cooke v. Smith*, 7 Haw. 579, where an unrecorded transfer as a pledge was held valid as against an assignee in bankruptcy of the transferor. If it would be good as against such an assignee it certainly would be good as against an administrator, who would as much as such an assignee stand in the shoes of the decedent and no more than such an assignee represent the general creditors, and in the case

above cited the court seems to have expressed a dictum to this effect. See also *Smith v. Castle & Cooke*, 6 Haw. 697, and a case on another subject but in some degree analogous, *Wright v. Brown*, 11 Haw. 401. In my opinion the pledgees in these cases have priority over the administrator to the extent of their claims.

### DISSENTING OPINION OF PERRY, J.

I respectfully dissent.

The language of our statute (Section 2016, Civil Laws) is clear and unambiguous. "No such transfer shall be valid, except between the parties thereto, until such new certificate shall have been obtained, or the transfer shall have been recorded on the books of the corporation." In the case at bar no new certificate has been obtained nor has the transfer been recorded on the books of the corporation. In accordance with the plain provision of the statute, then, the attempted transfer is invalid except as between the parties. The argument that the statute permits examination of the books only by stockholders and creditors of the corporation and that therefore the requirement as to registry of transfers must be presumed to have been intended for the benefit of such stockholders and creditors only, seems to me to be insufficient to justify a practical enlargement of the expressed exception by holding such transfers valid as against all other than the stockholders and creditors of the corporation and the corporation itself.

The decision in *Castle & Cooke v. Smith*, 7 Haw. 579, is not an adjudication to the contrary. The question presented in the case at bar was not raised or passed upon in that case. The decision was based upon other grounds.

Is the present controversy between the parties to the transfer and therefore within the exception named in the statute? I think not. The estate is insolvent, and the first duty of the administrator is to convert all the available property of the deceased into cash and to divide the proceeds *pro rata* among

the creditors. The heirs and distributees will receive nothing. The administrator in this submission is acting for the benefit of the creditors, and by the terms of the submission he is permitted to raise, and has raised the question, as to the validity of the transfer of the stock as between the creditors and the pledgee. (Whether, if Winter were alive, a creditor who had not attached or levied on the stock could raise the same issue or be permitted to be heard thereon, is a question which does not arise in this case and upon which no opinion need be expressed.) If the transfer is valid, the title to the stock is in the pledgee and the administrator is powerless to realize on it for the creditors; on the other hand, if it is invalid, the title is in the administrator and he may proceed to divide the proceeds of the stock among the creditors. The latter are directly concerned in the result. Under the circumstances of this case, I regard the issue as being between the creditors and the pledgee and not as being between the parties to the transfer.

In my opinion, the answer to question No. 1 should be that the transfer of the stock is invalid and that the legal title thereto stands in the administrator, and question No. 2 should be answered in the affirmative and No. 3 in the negative.